## STATE OF IOWA;

DES MOINES, JUNE TERM, A. D. 1873.

IN THE TWENTY-EIGHTH YEAR OF THE STATE.

PRESENT:

HON. JOSEPH M. BECK, CHIEF JUSTICE.
  " CHESTER C. COLE,
  " WILLIAM E. MILLER, } JUDGES.
  " JAMES G. DAY,

---

PITSINOWSKY v. BEARDSLEY, HILL & CO.

1. **Principal and agent:** AGENT'S AUTHORITY. An agent's authority extends to all acts connected with the subject and purpose of his agency.

2. —— APPLICATION OF THE RULE. An agent having authority to sell and deliver threshing machines under contract, giving the purchaser the right to try the machine for a certain length of time, and stipulating that if it failed to work well it was to be returned, has authority, while a machine is thus on trial, to waive such return.

VOL. XXXVII. — 2

3. **Damages**: MEASURE OF: INTEREST. In an action for a breach of warranty of a machine, it was held that the following instruction was not erroneous: If you find for plaintiff, your verdict will be for the difference in value of the machine, had it been as warranted, and as it really was, with interest at *seven* per cent from date of sale.

*Appeal from Winneshiek District Court.*

THURSDAY, JUNE 19.

IT is alleged in plaintiff's petition that in June, 1869, the defendants sold to the plaintiff one " Auburn Harvester " for the sum of $190, and freight thereon, $15, in all the sum of $205 ; that plaintiff paid thereon the freight, $15, and executed his notes to the defendants for the balance, bearing seven per cent interest, which notes the defendants have transferred to third parties. It is further alleged that at the time of the sale of said harvester the defendants warranted said machine as the best machine in use, etc., and alleging a breach of warranty, and claiming damages.

The answer denies each of the allegations in the petition, except the sale of the harvester to the plaintiff, and taking his notes which were transferred to other parties.

The answer further sets up that the harvester was sold to the defendants upon a written conditional warranty which provided if the machine did not work well, the plaintiff was to notify defendants or their agent, and again try the machine in his presence ; and if it would not then work well that plaintiff was to return said machine to defendants free of charge, and defendants would deliver up to plaintiff his note given therefor; and also the further condition that if plaintiff kept said machine for a longer period than two days, the said warranty would be considered fulfilled except as to hidden defects in the material; and it is averred that the plaintiff failed to comply with these conditions.

The answer has attached thereto an instrument of which the following is a copy.

" ORDER FOR AUBURN HARVESTER,

" Self-Raking Reaper and Mower Combined.

" MESSRS. BEARDSLEY, HILL & CO., AUBURN, N. Y.:

" You will please ship to me at Calmar, Iowa, care of W. J. Cremer, delivering agent, on or before the first day of July, 1869, one of your improved Auburn Harvesters, five foot cut, with the usual extras, for which I agree to pay you or your agent in cash and notes, on arrival of machine at Calmar, $190.00, as follows: Cash, $——; note for $50, due Jan. 1st, 1870; note for $140, due Jan 1st, 1871; interest at 7 per cent on notes from July 1st, 1869; and transportation and delivery charges upon its receipt; Provided that said $190 and notes given shall be refunded if the same does not fulfill the terms of the following

" WARRANTEE:

" That it is a good and substantial self-raking reaper, cutting the grain and laying the bundles well, and a good and successful mower, not liable to clog in grass or grain, and that one man and two horses, or oxen, can handle the same for either reaping or mowing; Also that it is well made, of good material, and that I am to have a trial of two consecutive days in order to test the machine. If upon such trial the machine does not fulfill the terms of the above warrantee, I agree to give you or your agent immediate notice, and furnish a suitable team and again try the machine in your or his presence, and if the machine still fails to perform as warranted, I agree to return it to the place of delivery free of charge; I further agree that if I use the machine for more than two days I will consider the warrantee fulfilled, except as to hidden defects in the material.

" Dated, *May* 19, 1869.

" [Signed]                    JOHN PITSINOWSKY."

Trial by jury. Verdict and judgment for plaintiff. Defendants appeal.

*John T. Baker* for the appellants.

No appearance for the appellee.

MILLER, J. — The evidence shows that one W. S. Cremer was agent for the defendants in 1869, to sell and deliver 1. PRINCIPAL machines for them, and among other kinds the AND AGENT: "Auburn Harvester;" that he employed one agent's author- ity. Frank Chyle to assist him in selling machines in Howard county. Chyle says that Cremer "asked me who were the fellows that wanted reapers, and I told him the names, and he wanted me to go along with him, and he would allow me as full commission as if I sold them myself. I went with him and we sold about seventeen ; and I was to say all the time, when we were selling, just as he told me." It is shown that the plaintiff could not read or talk the English language, and that in the sale of the harvester to him, Chyle interpreted all that was said in the Bohemian language, but he did not interpret the written contract. All that Chyle said to the plaintiff he was told to say by Cremer, the agent.

The evidence shows that the machine failed to work well ; that it would not cut clean. After the plaintiff and Chyle had tried to make the machine work, but without success, the latter told the plaintiff on the first day of the trial " to keep the machine and let it go ; " that he then saw the agent Cremer and informed him that the machine would not work well, when he directed Chyle to tell the plaintiff to keep the machine and he would fix it up with him; that he would either fix the machine so that it would work all right, or else settle it up with him and deduct something from the price. Chyle informed plaintiff what word the agent had sent by him, and accordingly he kept the machine, but the agent never fixed the reaper or deducted any thing from the price. There was also evidence tending to show that, in the fall of 1870, there was an effort made by the plaintiff to settle the matter with the general agent of the defendants, but without success.

At the close of the evidence and arguments the court gave

to the jury the following instructions at the instance of the plaintiff:

"1. If you find from the evidence that W. J. Cremer was the party who sold the machine to plaintiff for defendant, and that the notes were taken in the name of defendants and for them, and that said Cremer was the delivering agent of defendant, then said agent had power to vary or waive the terms of the warrantee in relation to the return of said machine.

"2. If you find from the evidence that plaintiff could not speak nor understand the English language, and that W. J. Cremer was the general agent of defendants, and employed Frank Chyle to interpret to plaintiff the terms of the warrantee whereon said machine was sold, then the plaintiff had a right to rely on the representations of said Cremer made through said Frank Chyle, as to the terms of the warrantee."

These instructions were excepted to and are assigned as error.

The principal point made in the argument is that Cremer was only an agent to sell and deliver machines, and as such had no authority to waive the return by the plaintiff within two days if the harvester did not work as warranted. The plaintiff agreed by the writing, "that if I use the machine for more than two days I will consider the warranty fulfilled, except as to hidden defects in the material." It is also stipulated that if upon a trial of the machine it is found not to fulfill the terms of the warranty the plaintiff was to give the defendants or their agent notice thereof. This the plaintiff did, for the sub-agent Chyle was himself present when the machine was tried, and he witnessed its failure. Now, if plaintiff had undertaken to return the machine, to whom would it have been his duty to return it? To either Cremer, the agent, or to Chyle, his employee. Suppose he had returned it and each of them had refused to receive it, he could have taken it back with him without thereby being concluded from suing on the breach of warranty. The fact that before the time had elapsed for a return of the machine, both Cremer and Chyle directed the plaintiff not to return

it, is in effect the same as a refusal by them to receive it upon a return. The law did not require the plaintiff to convey the machine to the place of sale, when he was directed by the only persons having any authority to receive it, not to do so ; and their directions to him not to return the machine were as binding on the defendants in the premises as if they had each refused to receive the machine upon an actual return.

More than this, the agent's authority extended to all such acts as were properly connected with the sale and delivery of the machine. Story on Agency, §§ 58–61. His duty was to sell and deliver, and consequently every thing necessary or proper to be done touching such sale and delivery was within the scope of his authority. Now, the sale was not complete at the time the machine was first delivered to the plaintiff, but it was conditional only. The plaintiff had the privilege of using it for two days, and if it did not fulfill the terms of the contract he might return it. The authority of the agent did not stop, therefore, when plaintiff first took the machine on trial, but it continued until the sale should be either completed or the machine returned without any sale being made. The acts, declarations, and directions of the agent made during this time and properly connected with the sale of the machine are therefore within his powers and binding on his principal; so when it was found that the machine could not be made to perform as warranted the agent might very properly direct the plaintiff to keep it on his own place instead of returning it to the agent's hands.

To hold otherwise would be to establish a snare by which to entrap the unwary, and enable principals to reap the benefits flowing from the conduct of their agent in the transaction of business intrusted to his hands, without incurring any of the responsibilities connected therewith.

II. The court further instructed the jury as follows: " If you find for the plaintiff your verdict will be for the difference in value of the machine, had it been as warranted, and as it really was, with interest at seven per cent from date of sale."

3. DAMAGES: measure of: interest.

Appellants' counsel concede that this instruction states the true rule of damages except as to interest, and they claim it to be erroneous only as to the rate per centum, insisting that it should be six instead of seven per cent.

If the plaintiff had paid the price for the machine in money it is very clear that he could not recover more than six per centum on the excess over the value of the machine, and hence it is insisted that this should be the rule of damages in this case. The true question is, what sum will make the plaintiff whole, what sum will compensate him for the breach of warranty; and the true rule is, to ascertain the real value of the machine in its inferior condition *at the time of its purchase* and deduct that sum from the contract price as of the date of the contract. The difference is the measure of damages at that time. The amount of the notes given for the price would then be reduced just that sum in the principal thereof, leaving the face of the notes that much less than they really are. By this process the interest specified in the notes is stopped on the sum of the damages from the date of the notes and leaves the plaintiff liable to pay the value of the machine with the stipulated interest thereon. The rule laid down in the instruction reaches precisely the same result.

III. We see no reason for disturbing the verdict of the jury on the evidence, and the judgment of the court below must be

Affirmed.