CALEB H. BOOTH

*v.*

JOSEPHINE C. SMITH.

*Filed at Ottawa June 12, 1886.*

1. RESCISSION *by purchaser—for fraud — notice to agent.* Notice of the rescission of a contract for the purchase of shares in a coal company, for fraudulent representations on the part of the agent of the owner of the stock, was given to the agent of such owner, who acted for him in making the sale and continued to act as agent. The principal resided in another State, so that it was not practicable to serve the notice on him personally, and under the circumstances in evidence, it was thought notice to the agent who transacted the business, and who continued to act for him, was sufficient.

2. SAME—*estoppel by act of agent after termination of agency.* A married woman, through her husband, acting as her agent, bought stock in a coal mining corporation at an exorbitant price, after which her husband became an officer of the corporation, and much of the money paid by her was paid out under the direction and with the consent of her husband, in behalf of the corporation: *Held,* that she was not estopped by the acts of her husband, as an officer of the company, from seeking, by bill in equity, a rescission of the contract for fraud on the part of the vendor's agent, and be reimbursed the purchase money. While acting as an officer of the company he could not be considered the agent of his wife, any more than of any other stockholder.

3. SAME—*when decreed for fraud.* Where the owner of stock in a coal company sold three hundred and ninety-two shares of the same, through his agent residing in this State, for $4000, upon false representations as to mate-

rial facts, which, if true, vitally affected the value of the stock, and such representations were relied on and induced the purchase, and the sum paid was out of all proportion to the real value of the stock, a decree setting aside the sale for fraud, on bill by the purchaser, was held proper, and affirmed.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. H. M. Shepard, Judge, presiding.

Mr. S. P. McConnell, for the appellant:

In order that a sale may be set aside for false representations, it must appear that the representations were false concerning material facts, and relied on by the purchaser. *White* v. *Watkins*, 23 Ill. 426; *Walker* v. *Hugh*, 59 id. 375; *Fauntleroy* v. *Wilcox*, 80 id. 477; *Bond* v. *Ramsey*, 89 id. 29; *Banta* v. *Palmer*, 47 id. 99; *Turk* v. *Dorning*, 76 id. 71.

The representations were upon four different matters:— First, the quality of the coal; second, the amount of money invested in the property; third, the cost of mining; and fourth, that the mine was paying current expenses.

Counsel insisted that all the representations contended for were not made, and that appellee did not rely on those made, and that she was estopped from making a claim for reimbursement from appellant, Booth.

Messrs. Cratty Bros., for the appellee.

Mr. Chief Justice Scott delivered the opinion of the Court:

This was a bill in chancery, brought by Josephine C. Smith, against Caleb H. Booth, Oliver M. Parsons and the Western Indiana Coal Company. The relief sought, however, is principally as to defendant Caleb. H. Booth. It is set forth in the bill that complainant was induced, by false representations made by Oliver M. Parsons, as his agent, to purchase of Booth three hundred and ninety-two shares of the capital stock of the Western Indiana Coal Company, paying therefor the sum

of $4000, and the object of the bill is to set aside the sale on account of the alleged fraud practiced upon her, and for an account against Booth, from whom it is alleged she bought the stock, through her agent transacting the business for her. The fraud charged is, that Parsons falsely represented the company was successfully operating its mine, and paying its current expenses out of the proceeds of the coal taken from the mine, and that the capacity of the mine could be easily increased to fifty tons per day, when the mine would pay a large profit; that the coal taken from said mine was worth twenty-five cents a ton more than any coal mined in the State of Illinois; that the coal could be mined and placed on the cars at the mine at a cost not to exceed $1.27 per ton; that there had been invested by the stockholders of the company, in the plant and purchase of its property, the sum of $3500, and that its indebtedness was $1500. The bill then charges, that relying upon and believing the representations so made to be true, she, through her agent, made the agreement to purchase the stock. The answer made to the bill was not under oath, and serves no other office than to put the matters alleged against defendant at issue, and it will not therefore be necessary to state the contents. On the final hearing of the cause, upon the pleadings and the evidence, the court rendered a decree in favor of complainant, setting aside the sale of the stock to her, and adjusted the equities between her and defendant, Booth, by taking an account, and rendering a decree against him for the balance found due from him, after appropriating to complainant the amount in the hands of the receiver. That decree was affirmed, on the appeal of Booth, in the Appellate Court for the First District, and he brings the case to this court on his further appeal.

Most, if not all, the questions involved are purely questions of fact, and as to some of them the testimony is quite conflicting. It does not seem to be seriously controverted by Booth, either in his answer to the amended bill, which charged

the fact of agency, or by the evidence, that Parsons was his agent, and acted as such in making the sale of the stock to complainant. That fact in the case may be regarded as proved with such certainty, that the agency will be taken as established, in the further consideration of the case. Nor can it be seriously questioned that complainant relied upon the representations, whatever they were, in making the purchase of the stock. She could have had but little other information as to the value of the mines and the plant owned by the company. Had it not been for the representations made to her agent, it is evident she never would have purchased the stock at the price she did. The sequel shows, past all doubt, the amount. paid for the stock was out of all proportion to its real value. There must have been something other than the slight personal examination of the mines and plant, made by her agent, that induced the making of the purchase of the stock. The testimony touching the representations alleged to have been made will be considered further on, in the brief discussion that is to follow.

There is no ground for the objection the offer to rescind the sale was not made in apt time. No considerable delay was suffered to intervene in giving notice to Parsons of the intention to insist upon a rescission of the contract. The delay in filing the bill is satisfactorily explained, and it was perhaps done to favor Parsons himself, that he might be able to effect another sale of the stock. It was not practicable, in the first instance, to give Booth notice of the rescission of the contract. He lived in another State, and under the circumstances in evidence, it is thought notice to the agent that transacted the business, and who continued to act for him, was quite sufficient.

Coming now to consider the alleged false representations made to complainant's agent to induce her to buy the stock, the most difficulty in the case is experienced. Most of the testimony bearing directly on that branch of the case comes

from the agents of the parties that transacted the business for their respective principals. One of them (Smith) is the husband of complainant, and the other (Parsons) is the son-in-law of defendant, Booth. Much of their testimony is irreconcilably conflicting. It would answer no good purpose to enter upon any close analysis of the evidence. It is not necessary to do more than state the conclusions reached after a careful study of the whole case as it appears in the record.

There can hardly be a reasonable doubt that Parsons made certain statements to the agent of complainant as to the cost of mining the coal, the cost of transportation, and the price at which it could be sold when it reached the market, that were very material in reaching a conclusion as to the value of the stock it was proposed to sell. Other representations,— for instance, as to the amount that had been invested in the mine and plant, and as to whether the mines were then paying expenses,—were no doubt made, but whether to the extent insisted upon by complainant, the evidence is unsatisfactory. If the statements and representations, as alleged by complainant, were, in fact, made, they were vital and material, and affected, in a large measure, the value of the stock in the company. There are some facts and circumstances that tend rather to support the testimony given by the agent Smith, and if what he says concerning the representations made by Parsons is true, a rather strong case is made for relief. According to his testimony, what Parsons stated were not mere expressions of opinion as to value, but representations as to actual facts within his personal knowledge, which, if true, vitally affected the value of the stock, and if untrue, were hurtful to complainant, as they must have induced her to buy stock in the company that she would not otherwise have done. What representations Parsons may have made to complainant's agent to effect the sale of Booth's stock to her, and whether such representations were willfully false, and made with a view to deceive her as to its value, are questions de-

pending, as they do, so much on conflicting testimony, this court can hardly say the decree of the court below is not warranted by the evidence, and for that reason should stand. If the representations as to matters affecting the value of the stock were in fact made, as testified to by Smith, and as the courts below have found, not the slightest doubt is entertained that they are material, and were confidently relied upon by complainant's agent in buying defendant, Booth's, stock for her. Conflicting as the evidence is, it is still thought there is sufficient to support the decree of the trial court,—at least no ground is perceived on which the decree can be reversed, and it must stand.

It is said, with some confidence, complainant is estopped to make any claim against defendant, Booth, for reimbursement. The facts relied upon as creating the bar to relief is, that after she had purchased the stock and paid for it, her husband, who had acted as her agent in buying the stock, became an officer in the corporation, and much of the money which she had paid in for stock, was paid out under the direction and with the consent of her husband, as an officer of the company. A sufficient answer to the position taken is, that while her husband was paying out or consenting to the paying out of the money, he was not then acting as complainant's agent, but as an officer of the corporation. While acting in that capacity, it would seem he was no more the agent of complainant than of defendant, Booth, or any stockholder in the company. In that capacity he was the agent of the corporation, and not the personal agent of complainant, and there can be no ground for an estoppel, for that reason, as to complainant.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*