McCormick Harvesting Machine Company, Appellant, v. D. M. Brower, Appellee.

1. **Sale of Machine:** WARRANTY: CONSTRUCTION: BREACH. A contract for the sale of a harvester provided: "These machines are all warranted to be well made, of good material, and durable with proper care." It further provided that the machine might be returned if it could not be made to work well. *Held*, that the warranty was not all embraced in the words quoted, but that it included also the proper working of the machine under reasonable conditions, and that proof of the naked fact that it would not work well under such conditions was sufficient proof of a breach of the warranty.

2. ———: ———: ———: INSTRUCTION TO JURY. In an action for the price of a machine sold upon a warranty that it was "well made" and of good material, with an agreement that it might be returned if it could not be made to work well, *held*, that it was error to instruct the jury that the defendant, in order to establish a good defense, must not only show that the machine would not do good work when operated with ordinary skill and under average conditions as to ground and grain, but also that such failure to work was caused by some defect of the machine growing out of the fact that it was not well made, and of good material.

3. ———: BREACH OF WARRANTY: RESCISSION: CONDITIONS. Where a machine was purchased under an agreement that it might be returned if it could not be made to work well, but that, if it did not work well after one day's trial, the purchaser should give immediate notice to the seller, and allow time to put it in order, *held*, that notice given after only one day's trial was premature, in the absence of the discovery of any defects which would absolutely preclude its working well; that the requirement that he give "immediate notice" meant that he should do so promptly after the time for trial had passed; and that where the purchaser, after giving such notice, refused to allow the seller reasonable time to put the machine in order, he thereby violated the contract, and put it out of his power to rescind it.

4. ———: AGENT'S POWER TO WAIVE CONDITIONS. An agent who has authority to sell a machine under a contract providing for its return, upon certain conditions, in case it fails to work well, has authority also to waive the conditions named in the contract.

5. ———: DEFECTS: EVIDENCE. The defendant was permitted to testify, against objection, that the plaintiff's agent had given him verbal instructions as to handling the machine, and that he did just as he was instructed; *held*, that he should have been required to state what the instructions were, and what he did by way of complying with them.

*Appeal from Dallas District Court.*—Hon. J. H. Appel-
gate, Judge.

Friday, May 26, 1893.

Action against the defendant for the price of a
harvester. The defense was a breach of warranty.
There was a jury trial resulting in a verdict and judg-
ment for the defendant. The plaintiff appeals.—
*Reversed.*

*Kauffman & Guernsey* and *D. W. Woodin*, for
appellant.

*White & Clark*, for appellee.

Kinne, J.—July 3, 1889, the defendant entered into
the following written contract:

"McCormick Harvesting Machine Company will
ship for the undersigned on or before July 10, 1889,
one of their latest improved 5-foot H. binders, includ-
ing the usual extras, consigned to the care of G. M.
Armfield, at Redfield, the undersigned agreeing to pay
the McCormick Harvesting Machine Company $130
cash, with interest thereon at the rate of —— per cent.
per annum from date until due, and at the rate of ——
per cent. thereafter until paid. These machines are all
warranted to be well made, of good material, and dura-
ble with proper care. If, upon one day's trial, the
machine should not work well, the purchaser shall give
immediate notice to said McCormick Harvesting
Machine Company, or their agent, and allow time to
send a person to put it in order. If it can not then be
made to work well, the purchaser shall return it at once
to the agent of whom he received it, and his payment,
if any has been made, will be refunded. Continuous
use of the machine, or use at intervals through harvest
season, shall be deemed an acceptance of the machine

by the undersigned. Dated the 3d day of July, 1889. Postoffice, Adel; county, Dallas; state, Iowa.

"D. M. Brower."

The plaintiff claims that the machine in all respects conformed to the requirements of the contract; that delivery of it was made thereunder; and that it was received and accepted by the defendant, and he refused to pay therefor. The defendant admits the purchase of the machine, the execution of the written contract, and that he has not paid for the machine. He avers that the machine was purchased of the plaintiff through George Armfield, its agent at Redfield, Iowa. He sets out the contract, and alleges that when the machine was delivered to him it was set up by the plaintiff by its agent, George Armfield, assisted by one Charles Armfield, an employee of George Armfield. That the latter attempted for about twelve hours to make the machine work well, but was unable to do so, and it did not work well, and said agent left the defendant, knowing that the machine did not work well. That when he left, the defendant notified him that the machine did not work well; that he would not keep it and pay for it if he or the plaintiff did not make it work properly, and requested him to notify said George Armfield, the plaintiff's agent, of these facts, and to furnish a suitable person to make the machine work properly. That he then and there asked Charles Armfield to make said machine work well. That the latter told the defendant if he would continue to use the machine it would work all right. That he refused to remain and fix the machine so it would work properly, but promised to come back in a day or two, and make the machine work well. That, as requested by the plaintiff's agent, he did retain the machine for about four days, and used every effort to make it work well, but was unable so to do. That the plaintiff, though notified in accordance

with the terms of the contract, that the machine failed to work well, neglected to fix the same. That the defendant notified George Armfield, the plaintiff's agent, that the machine was defective in material and construction, and would not work well, and offered to return same, but said agent requested the defendant to retain it where it was; that he would have it boxed up and shipped to the plaintiff; and then agreed to receive the machine of the defendant on his premises. Avers that it was not well made and of good material, and durable with proper care, and that it did not work well upon one day's trial. The defendant particularly complains that the machine was of excessive draught; that it would not elevate the grain well, would not bind properly, and otherwise would and did not work well.

I. The appellant claims that the warranty was all embraced in the provision that "these machines are all

1. Sale of machine: w arranty: construction: breach.

warranted to be well made, of good material, and durable with proper care." This, it occurs to us, is too narrow a view of the

contract. It expressly provides for returning the machine after one day's trial, if it does not "work well," and notice is given, and an opportunity afforded the plaintiff to send someone to put it in order. That the machine would "work well" was just as much a part of the warranty as that it was made of good material. Nor was it incumbent on the defendant to prove wherein it was not well made. He was not a mechanic or a manufacturer. He had a right to rely upon the contract that it "would work well," and if the defendant, in operating the machine, exercised reasonable care and skill in an honest effort to make it work properly, and if the condition of his grain and ground was such as not to prevent it from working well, and it would not do so, then there was a breach of the warranty.

II. The appellant complains of the court's refusal to give the following instruction: "The defendant

2. —: —: —: claims a breach of warranty in the contract
*instruction to jury.* in suit. The contract in question warrants the machine in question to be well made, of good material, and durable with proper care. The warranty that the machine is well made, of good material, implies a warranty that it will do good work. This, however, does not mean that the machine in question was warranted to do good work under any and all conditions. It means that the machine in question will not, on account of poor material, or on account of being poorly made, fail to do good work, when operated by a person of reasonable skill and intelligence, and under average conditions as to ground and grain. To show a breach of warranty in this cause the defendant must make it appear by a fair preponderance of the evidence that the machine in question failed to do good work when operated by a person of ordinary skill in such matters, under average conditions as to ground and grain; and, further, that this failure was caused by some defect in the machine growing out of the fact, if such you find the fact to be, that this machine was not well made, of good material." In the form presented, we think this instruction was properly refused. It is objectionable, for the reasons stated in division one of this opinion.

III. Did the defendant comply with the terms of the contract as to the trial of the machine, before notifying the plaintiff of its failure to work as 3. —: breach of warranted? He was required to give the *warranty: rescission: conditions.* machine one day's trial. At the time the notice is claimed to have been given to the expert, Charles Armfield, that the machine did not work well, the time for trial had not expired. As near as can be determined from the evidence, the machine had not been operated over a half day. By the terms of the contract the defendant was required to try the machine fairly for one day before he could give the notice, if it did not work. It is possible that there might be such

defects in a machine as would absolutely preclude its working, so that further trial would be unnecessary, and the notice might be given, but the evidence in this case fails to show that any such condition existed. So it seems that the notice given to Charles Armfield on July 16, 1889, was premature, and hence ineffectual. The contract required the one day's trial. The parties must abide by their agreement, fairly entered into. *Wendall v. Osborne*, 63 Iowa, 103; *Russell v. Murdock*, 79 Iowa, 101.

After Charles Armfield left the defendant's place on Tuesday, the sixteenth of July, the defendant continued to work the machine up to the following Friday morning, and failed to make it work well. On the latter day he notified the agent of whom he purchased it of its failure to work, and told him he would return the machine the next day, but the agent requested him not to do so, but to keep it on his place for awhile; that he would see the company, and thought they would knock it down, and take it to Kennedy, and ship it to Des Moines. It is claimed that this notice was not given immediately after the one day's trial was had. True it is that two days intervened after the one day's trial, and before notice of the failure of the machine to work well was given to the agent, and the appellant claims that such notice was too late. The notice was required to be given "immediately" after the one day's trial. That would demand that the defendant act promptly in giving his notice after the time for trial had passed. Whether or not he did so act must be determined by the jury in view of all the facts of the case. *McCormick Harvesting Machine Co. v. Russell*, 86 Iowa, 556. If it be conceded that the notice to the agent, George Armfield, was in time, then, under the contract, it was incumbent on defendant to afford an opportunity to plaintiff or its agent to send a man to fix the machine so that it would work properly. The evidence, without any conflict,

shows that George Armfield, upon the notice being given him that the machine would not work well, proposed to telegraph for an expert to put the machine in order, and agreed to have him at the defendant's house the next morning, but the defendant would not permit him to do so. The defendant, having refused to comply with the contract in this respect, put it out of his power to rescind it. *King v. Towsley*, 64 Iowa, 75.

IV.   The defendant in his answer, avers that the plaintiff's agent "verbally agreed to receive said machine of the defendant, where it was on defendant's premises at that time." It is not necessary, in view of the issues, to determine whether—even if the defendant had so far complied with the contract as to entitle him to return the machine—his return of it to the town of Redfield, ten days after he decided not to keep it, would have been a compliance with the terms of the contract. For the reasons heretofore stated, at the time he thus undertook to return it, he had no right so to do.

V.   It is urged that the court erred in admitting evidence tending to show that the plaintiff had waived the condition of the contract relating to the return of the machine. In so far as this objection is grounded on the claim that George Armfield, the agent, had no authority to waive a return of the machine, it is not well founded. The evidence shows without conflict that he was the agent of the plaintiff for the sale of these machines, and that he sold this one to the defendant. Having the power to sell, he had the power to waive the return of the machine. *Pitsinow-sky v. Beardsley*, 37 Iowa, 9; Mecham, Ag., section 349; *Warder v. Robertson*, 75 Iowa, 585. It is said such evidence was inadmissible, because no waiver was pleaded. The waiver is not as clearly pleaded as it should have been, yet we think the facts stated are sufficient to admit introduction of the evidence, if the defend-

4. ——: agent's power to waive conditions.

ant had so far complied with his contract as to be entitled to avail himself of such a plea.

VI. The sixth and eighth instructions are erroneous in ignoring the provision of the contract that one day's trial of the machine was necessary before notice could be given that it failed to work. well. Under the wording of the sixth instruction the jury would be justified in finding that it was not necessary to try the machine for a day but, if it was "fairly tested" for the half day that Charles Armfield was at the defendant's place, it would be a compliance with the contract in that respect. We have already stated that it was incumbent on the defendant to comply with the contract as to a trial of the machine before he was entitled to give notice.

VII. In the course of the examination of the defendant, he stated that Mr. Armfield gave him certain verbal instructions as to the running of the machine, but did not disclose what they were. He was then asked to "state whether or not you did as he told you." He answered, "I did just as he said." The question was objected to as calling for the conclusion of the witness. The defendant also moved to strike out the answer for the same reason. The motion and objection were overruled. This was error. The jury knew no more about the facts after this question was answered than before. The inquiry called for no facts, and the answer was but a conclusion based upon facts not in evidence. It might have been proper to have shown what instructions were given, and to what extent and in what manner they were followed. The facts should have been put before the jury, and they could have determined as to whether or not the instructions were followed. Other evidence of the same character was excepted to and improperly admitted. The witness Harris was asked how the draught of that machine compared with that of other

*5. ——: defects: evidence:*

machines of that character, and, if it was greater, how much greater. This was objected to and the objection overruled. He answered that he "could not say just how much greater, but it was very hard; it would just kill a team." Such evidence was not admissible under any issue in the case. The question to be determined was, did the machine "work well?" not how it worked as compared with some other machine. Did the machine comply with the warranty? not how it compared with some other machine, about which the jury knew absolutely nothing.

Many other errors are assigned that we cannot specially consider. Some of them raised the same questions already passed upon, others are not well grounded, and some of the questions presented we ought not to discuss in view of another trial. The judgment of the court below is REVERSED.