| 122 | 703 |
| 135 | 207 |

| 122 | 703 |
| 138 | 60 |

| 122 | 703 |
| 139 | 504 |

THE PARSONS BAND CUTTER & SELF FEEDER COMPANY, Appellant, v. PETER MALLINGER, Appellee.

Sales:   IMPLIED WARRANTY.   Where a machine is intended for a
1     particular purpose and will perform no other service, there is
      an implied warranty that it is adapted to the use intended and
      will reasonably perform the work.

Warranties: WAIVER.  Where a vendor tenders an express warranty
2     upon certain conditions which are not performed by the ven-
      dee, there is a waiver of the benefits to be derived therefrom,
      and the warranty implied as a matter of law governs the
      transaction.

Rescission:   TENDER.   To effect the rescission of a contract of sale
3     there must be a tender of the article sold to the vendor or to
      an authorized representative, but the tender need not be ac-
      cepted.   Evidence of authority held sufficient to bind the
      principal by a tender to the agent.

Rescission:   VALUE:   EVIDENCE.   Where a machine is sold for a
4     special use and upon trial proves to be of no "substantial
      value" for the purpose intended, the contract of purchase may

be rescinded and recovery defeated on the ground of failure of consideration, although there may be some value in the materials of which it is composed. Evidence considered and held to support a finding that the machine was of no value for the purpose intended.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

THURSDAY, FEBRUARY 11, 1904.

ACTION to recover the contract price of a certain machine sold, as alleged, by plaintiff to defendant. The plaintiff at the time in question was represented at Ft. Dodge, this state, by the Mitchell Implement Company as its agent. The defendant is a farmer residing in the vicinity of Ft. Dodge. In July, 1900, defendant gave plaintiff, through the Mitchell Company, an order in writing for a band-cutter and self-feeder, a machine designed and intended to be used on a grain-threshing machine, the particular purpose thereof being that indicated by the name of the machine. It is provided in the writing that defendant shall pay freight from Newton, the principal place of business of plaintiff, and execute two notes in favor of plaintiff for the sum of $105 each, one payable November, 1900, and the other November, 1901, and this before delivery of the machine to him; that in the event of his refusal to receive the machine, or to pay freight and execute notes, such written order shall stand as the written obligation of defendant, and have the same effect as a note. The writing includes an express warranty of the machine, and bears the signature of plaintiff. It is expressly provided, however, that such warranty shall be invalid in case the machine is not settled for when delivered. Upon request of the Mitchell Company a machine was shipped from Newton to Ft. Dodge, and that company received the same, and paid the freight charges thereon. Such machine was at once taken to the farm of defendant by an employe of the Mitchell Company, one Corbett, and, in the absence of defendant, put upon and attached to his threshing machine. Upon the arrival of

defendant, Corbett presented two notes and requested signatures thereto, which was refused. Defendant explains his conduct in this respect by saying that he was assured by the agent of the Mitchell Company who took his order that he would not be called upon to execute notes until after the machine had been tried and found satisfactory. The machine was left by Corbett, and within a few days defendant undertook to operate the same. He testifies that he followed the printed directions furnished him, but, after two days of trial, he failed to make it work. On the second day he notified the Mitchell Company that the machine did not work right, and on the next day the company sent out a man, who tried to remedy the difficulty, but without success. On the fourth day one Amond, who appears to have been connected with the Mitchell Company, came out with an expert. Such expert failed to make the machine work properly, and abandoned the task. As Amond and the expert were about to leave, defendant demanded of them that they take the machine away. They refused, the reason assigned being that defendant had failed to sign notes when the machine was delivered to him. Defendant then took the machine off from his thresher, and proceeded to work without it. On the day following, one Griffin, a general agent of the plaintiff company, came to defendant and requested a full settlement, saying that, such being had, he was there to make the machine work. Defendant refused to settle in advance, and Griffin went away. In a few days notice of this suit was served. Immediately thereafter defendant took the machine to Ft. Dodge, and tendered the same to the Mitchell Company. His tender was refused, and he left the machine with another implement house in Ft. Dodge—Granger & Co. On the same day he served upon the Mitchell Company a written notice as follows: "To Parsons Band-Cutter and Self-Feeder Co., and to Mitchell Implement Co., their agent: You are hereby notified that a certain Parsons Band-Cutter and Self-Feeder, which you delivered at my place about July 23,

1900, having been this day tendered to you by me, and you refusing to accept the same, it has been stored with Granger & Co., where it will remain subject to your order and at your risk. I have nothing further to do with it. Said machine being the same I offered back to you after its failure to perform the warranty of the contract. [Signed] Peter Mallinger." It appears that Mr. Mitchell, manager of the Mitchell Company, was not present when the tender was made by defendant; that upon his return, and finding the notice from defendant, he sent for the machine and had it hauled over to the warehouse of his company, where it has since remained. Thereafter, and on the same day, he wrote defendant as follows: "Dear Sir: In compliance with your notice we have concluded to accept without prejudice the feeder left by you with Granger & Co., without in any way affecting the question between yourself and the Parsons Feeder Co. as to your liability under contract. [signed] Mitchell Implement Co." The further facts material to be considered will be found stated in the opinion. The trial was before a jury, and resulted in a general verdict in favor of defendant. The jury also answered in the negative a special interrogatory submitted to it by the court on its own motion, as follows: "Do you find that the machine in controversy, as delivered to the defendant, was of any material or substantial value? Answer 'Yes' or 'No.'" Judgment was rendered on the general verdict in favor of defendant for costs, and plaintiff appeals.—*Affirmed.*

*M. J. Mitchell* and *Wright & Nugent* for appellant.

*Kenyon & O'Connor* for appellee.

BISHOP, J.—Counsel for appellant seem to think that under the circumstances disclosed by the record no right was reserved to the defendant to work a rescission of the contract. We can agree quite readily with counsel that one party alone cannot ordinarily rescind a contract, or force the other party to rescind, unless his

3. IMPLIED warranty.

act is in some way authorized or acquiesced in by the other. What two at least are needed to make, one alone cannot ordinarily undo. This is the doctrine of the text of 2 Mechem on Sales, section 810, and may be accepted as the general rule. But, as we think, the facts of this case do not bring it within the strict operation of the rule thus stated. The record makes it clear that the machine in question was intended to be devoted to a special purpose—that of feeding a threshing machine. This was the understood purpose for which it was desired by defendant, and, it may be added, the character thereof was such that as a machine, at least, it could not have been adapted to any other use. In a case presenting such facts, the law implies a warranty to the effect that the machine is adapted to the use intended, and that it will reasonably perform the service required. This doctrine finds ample support in the following authorities: 2 Mechem on Sales, section 1344; *Davis v. Sweeney,* 75 Iowa, 45; *Blackmore v. Fairbanks,* 79 Iowa, 282; *Harvester Co. v. Brower,* 94 Iowa, 145; *Bank v. Rathmann,* 78 Iowa, 288; *Aultman v. Trainer,* 80 Iowa, 452.

Appellant does not question the doctrine of the authorities thus cited, but its counsel insist that as the writing signed by the parties in fact makes provision for an express

2. WARRANTIES: warranty, and as an implied warranty cannot
   waiver.       arise in the presence of an express warranty

covering the same ground, there is no room for the application of the doctrine of implied warranty. The argument seems to be that, having made provision whereby an express warranty might be made available, this must be taken to exclude the idea that any other warranty was or could have been intended; that in the presence of such provision a warranty by mere implication of law could not arise, as the parties must be presumed to have given expression to their contract as an entirety by the writing. As applied to the facts of this case the argument is without force. The contract as signed provides that the machine must be paid for, either in cash or notes, before delivery, in order that the express war-

ranty may become effective. Now delivery was in fact made·
by plaintiff, acting through the Mitchell Company, before
payment was demanded, and defendant then refused to set-
tle until after a trial of the machine was had. In this plain-
tiff acquiesced, and, through its agents and employes, assisted
in trying to make the machine do the work it was intended
for. Defendant having failed and refused to perform the
stipulated condition upon which the existence of an express
warranty was made to depend, he must be held to have
waived all benefit to be derived from such express warranty.
Certainly under the circumstances the plaintiff could not
have been held as upon an express warranty. Summing up
the situation, the parties stood precisely as though the sub-
ject of an express warranty had never been suggested between
them. Counsel for appellant do not cite us to any authority
holding that where a vendor tenders an express warranty up-·
on conditions, which warranty the vendee refuses to avail
himself of by performing the required conditions, such ven-
dee cannot thereafter be heard to assert a breach of the war-
ranty implied, as matter of law, in the event that the ma-
chine purchased wholly fails to perform the special work for
which it was intended and desired. No good reason in sup-
port of such a doctrine suggests itself to our minds, and we
know of no authority declaring in favor thereof.

II. Counsel for appellant insist that the attempt to re-
scind on the part of defendant was ineffectual, for the reason
that no authority on the part of the Mitchell Company to

3. RESCISSION: agree to or acquiesce in a rescission is made to
tender.      appear. That, to effect a rescission, tender
must be made either to the vendor or to some authorized rep-·
resentative, is true beyond question. Now the facts already
stated disclose the circumstances of the return of the ma-
chine. The Mitchell Company was confessedly the agent
and representative of the plaintiff company, and as such se-
cured the signature of defendant to the contract, and made
delivery of the machine. All that was done in trying to
trying to make the machine work was done with the knowl-

edge of or by or under the direction of the officers and employes of that company. In point of fact, the direct transaction in its entirety was had with the Mitchell Company; the plaintiff company appears only as it is named as principal in the contract, and by Griffin, who appeared, after the machine had been thrown aside, to demand a settlement. Such being the facts, we think a sufficient showing of authority appears. It is to be borne in mind that to make the rescission effectual it was not necessary that the agent agree to or acquiesce therein. It is sufficient if the agent who made the sale continues to represent his principal as when the sale was made. The following authorities give support to the doctrine thus stated: *Scott v. Wells,* 6 Watts & Sargeant (Pa.) 357 (40 Am. Dec. 568); *Booth v. Smith,* 117 Ill. 370 (7 N. E. Rep. 610); *Vawter v. Bacon,* 89 Ind. 565; *McCormick v. Brower,* 88 Iowa, 607; *Pitsinowsky v. Beardsley,* 37 Iowa, 9.

III.   A further contention of counsel for appellant is that there could be no right of rescission on the part of defendant, inasmuch as the record fails to show that the machine was wholly worthless and of no value whatever. In the fourth instruction the jury was told that, if it be found that the machine was so defectively made or so defectively designed that it was wholly worthless and of no value, then the defendant received no consideration for the contract, and, such being found to be the facts, he cannot be held liable. In the sixth instruction it is further said that if, under all the evidence, the jury believed that the machine was of any material or substantial value, then the plaintiff would be entitled to recover the agreed price of the machine, with interest and freight charges added. It will be observed that, in the special interrogatory submitted to the jury, the expression "material or substantial value" is also made use of. As to the fact question involved, counsel for appellant make no claim that the machine in fact met the intended requirements, but they insist that the record affirmatively shows that the machine was

4. RESCISSION: value: evidence

at least of some value.  The evidence as to the value may be
stated in brief:  The defendant testified to having knowl-
edge of the value of such machines; that the value of this one
was nothing.  On cross-examination he says that the old iron
in the machine would be worth something.  Another witness
for defendant testifies that the machine was not worth any-
thing.  On cross-examination he testifies that it was not
worth anything on defendant's threshing machine.  In ad-
dition, there was the evidence of several witnesses to the
effect that the machine could not be made to do the work it
was intended for.  For the plaintiff there is the evidence of
Griffin, its general agent.  He did not see the machine at
work, but examined it as it lay upon the ground, and after-
wards in the warehouse of the Mitchell Company.  He says
that, from his experience in handling the machines, the one
in question at the time of its purchase was worth $210.  On
cross-examination he admits that it would not be worth a
penny on the market if it could not be made to do the work.
Such is all the evidence found in the record bearing upon
this subject.  To our minds it is very clear that therefrom
the jury might readily reach the conclusion that the machine
in question had no value in fact as a band-cutter and self-
feeder.  So, too, the jury might well find, the question being
directly submitted, that the materials of which the machine
was composed had some intrinsic value, the amount of which,
however, is not disclosed.  The case was sent to the jury,
however, upon the theory that, if the machine had no sub-
stantial value for the intended purpose, then plaintiff could
not recover, and this notwithstanding there may have been
some value for other purposes.

We have, then, the question whether the machine, which
upon trial proved to be a failure, may be returned to the
seller and such failure relied upon to avoid the purchase
price, and this regardless of the fact that the materials of
which the machine is composed possess some intrinsic value.
In our view, this question does not present two sides, and the
importance thereof does not warrant any extended discussion.

It is the rule of the cases that a seller, by accepting an order for a machine, impliedly agrees that the article which he supplies shall in fact be reasonably fit and appropriate to the purpose for which it was designed and intended.   To such cases the doctrine of *caveat emptor* invoked by counsel has no application.   In *Davis v. Sweeney, supra,* the facts disclosed by the opinion make it clear that the questions at issue were in the main identical with those in the case at bar. True, there the appeal was predicated upon a ruling on a demurrer to the answer, but such answer presented all the matters of defense relied upon by the defendant in this case to defeat a recovery.   It was held that such demurrer should have been overruled, and this holding was predicated upon the thought that "the answer makes it perfectly plain that they [defendants] never received the machine as in compliance with the contract; and, as it appears from the answer that it was worthless, they could not be required to receive it as a fulfillment of the contract."   The point is not expressly made, but it is clear that the expression "worthless," as used by the court, has reference to the value of the machine for the uses and purposes for which it was intended.   Quite readily it may be supposed that the machine there in question had some value for other than the intended purposes— for kindling wood or old iron, if for nothing else.   As applied to a machine designed and intended for a special purpose, and purchased to be used in connection with such purpose, value is to be determined by reference to its adaptability and fitness for the purpose intended.   *Rogers v. Hanson,* 35 Iowa, 286.   Of course, a buyer might keep the machine and continue to use it for the intended purpose—or, for that matter, other purposes—for such a length of time as that the right to rescind might well be denied.   *J. I. Case, etc., v. Haven,* 65 Iowa, 359, cited and relied upon by counsel for appellant, was a case where plaintiff sued upon notes given in payment of a threshing machine.   Defendant pleaded the breach of an express warranty, in that the machine had proven to be of no value.   It appears that defendant had re-

tained the machine and used it through four threshing seasons. It was held that while the defendant might have rescinded within a reasonable time, yet, having elected to retain the machine and use it, he was limited to a recovery under the warranty of such damages only as he could prove. Without doubt, in such a case, the value of the machine, even for old iron, would be material. We have examined the other cases cited by counsel for appellant, and we find nothing to change our view as above expressed. We conclude that no prejudicial error is presented by the record. The instructions were even more favorable to plaintiff in some respects than it was entitled to, and the finding of the jury was clearly justified by the facts.—AFFIRMED.