## SANDWICH MANUFACTURING COMPANY v. GEORGE E. FEARY ET AL.

### FILED APRIL 17, 1894.   No. 4062.

1. **Sales:** HARVESTING MACHINES: CONTRACTS: WARRANTY: NOTICE OF DEFECTS: EVIDENCE. A manufacturing company sued a farmer for the price of a harvester delivered to him by its agent under a contract of sale and warranty, which provided: "That the harvester was to be paid for when tested and found to do good work; that if on starting the machine it should in any way prove defective or fail to work, the purchaser should give prompt written notice thereof to the agent from whom he purchased it, and allow sufficient time for a person to be sent to put it in order, and the defective part, if any, replaced, the purchaser rendering necessary and friendly assistance." The harvester was delivered to the farmer on Saturday evening. Monday morning, following, the employes of the agent, with the assistance of the farmer, tested the harvester, and it failed to work properly. Of this trial and failure of the harvester the agent was informed on Monday evening by his employes. Wednesday evening, following, the farmer, in person, verbally notified the agent of the trial of the harvester and its failure to work, and the agent then promised to send a person Thursday morning, "bright and early," to put the harvester in order. The farmer's grain was then ripe for harvesting; he waited for the person whom the agent was to send until 1 o'clock in the afternoon Thursday, and, such person failing to appear, the farmer then went to a neighboring village to procure a machine to harvest his grain; and while there employes of the agent offered to then go with the farmer and put the machine he had purchased in order. This offer the farmer declined, and returned the harvester to the agent. *Held,* (1) That it seems the agent was not entitled to a written notice of the failure of the harvester to work, when his own employes started and tested the harvester; (2) that, in any event, the written notice of the failure of the harvester to work was waived by the agent by his agreeing to send a person on Thursday morning to put the harvester in order; (3) that the findings of the jury that the farmer allowed the agent sufficient time to send a person to put the harvester in order, and that such agent did not send such person for such purpose within a reasonable time, were supported by the evidence.

2. ———: ———. *Sandwich Mfg. Co. v. Feary,* 34 Neb., 411, overruled.

REHEARING of case reported in 34 Neb., 411.

*Norval Bros. & Lowley* and *Leese & Stewart*, for plaint-
iff in error.

*R. P. Anderson* and *D. C. McKillip, contra.*

RAGAN, C.

The Sandwich Manufacturing Company (hereinafter
called "the company,") sued George E. Feary and Rufus B.
Feary (hereinafter called "Feary") in the district court of
Seward county for the price of two harvesting machines.
The case was tried before a jury, and Feary had a verdict
and judgment, and the company brought the case to this
court, where the judgment rendered was reversed. The
opinion will be found in 23 Neb., page 53. The case was
again tried in the district court, and Feary had a verdict
and judgment, and the company again brought the case to
this court, which reversed the judgment of the district court
and remanded the case. (See 34 Neb., 411.) Before the
mandate was issued, counsel for Feary made application to
this court for a rehearing, suggesting, in effect, that this
court was wrong in sustaining the error alleged by the
company for a reversal of the case. The error relied upon
by the company for a reversal was that the verdict was con-
trary to the law and the evidence. A rehearing was accord-
ingly granted and we have again carefully examined the
entire case. It is not thought necessary to restate the
pleadings and facts in full, as they will be found in the
opinions of the cases in the 23d and 34th Nebraska Re-
ports, *supra.*

The harvesting machines were sold to Feary under a
written contract accompanied by a written warranty. The
contract provided that the machines should be delivered to
Feary on the 1st day of July, 1883, and that he should
pay for them $480 when they had been tested and found

to do good work. The warranty provided, among other things, that "if, upon starting the machine, it should in any way prove defective and fail to work, the purchaser shall give prompt written notice to the agent from whom he purchased it and allow sufficient time for a person to be sent to put it in order, and the defective part, if any, be replaced, the purchaser rendering necessary and friendly assistance. If it then cannot be made to work, the machine shall be returned by the purchaser, free of charge, to the place where received, and the payment of money or note will be refunded, ending all further responsibility on the part of either party."

Feary's defense was, substantially, that the machine, when tested, did not do good work; that he gave notice of this fact to the agent from whom he purchased it; that he allowed sufficient time for a person to be sent out to put the machine in order, and the company failing to do this, he, Feary, returned the machine to the company. The machine was not delivered to Feary until the 7th of July, 1883, but Feary, by taking the machine and trying it, waived its delivery on the 1st of July, as provided by the written contract.

The evidence shows that the machines were delivered to Feary on Saturday, July 7; that on Monday, July 9, Feary and his hired hand and two employes of the company put up one of the machines and attempted to run it, and that it did not do its work properly; that it failed to properly elevate and bind the grain, and that it had a side draft, making it heavy to draw, and pulling the horses into the grain. On this 7th day of July Feary expressed to the employes of the company, who had put up the machine and been trying to make it work, his dissatisfaction with the binders; he sent word by them to their employer, the agent of whom Feary purchased the machine, that the machine did not do satisfactory work. This word was communicated by these employes to the company's agent

on Monday evening. On Wednesday evening, July 11, Feary called in person on the agent of whom he purchased the machine, told him of the trial made and of the failure of the machine to work, and the agent then and there agreed that on Thursday morning, July 12, "bright and early," the agent would come out and bring a person to remedy the defects in the machines and make them do the work for which they were purchased. Feary's grain was, at this time, ripe and needed harvesting. The grain of his neighbors, which he had contracted to cut, was also ripe. Feary waited at home for the agent until 12 or 1 o'clock of Thursday, July 12, for some person representing the machines to come and make them work. No one appearing at that hour, Feary went elsewhere for the purpose of securing machinery to harvest his grain. Later in the day the agents of the company found Feary at the place where he had gone to secure other machinery and offered to go back to his farm and put the machine in proper order. Feary declined this, and that evening returned the machines and delivered them to the company.

It will thus be seen that the real issue litigated on the trial was whether Feary allowed the company sufficient time for a person to be sent to put the machines in order, as provided in the warranty. The trial judge submitted that question to the jury under an instruction as follows: "What is a reasonable time for a person to be sent to put the machines in order, after notice was given to Babson, you are to determine from all the facts and circumstances proved surrounding the parties; the distance the defendant resided from Seward; the diligence or want of diligence in Babson in sending such person. No greater dispatch is required than such as would be fairly just and reasonable in view of all the facts and circumstances proved." The jury, by its finding, said that Babson, who was the company's agent, did not send a person to put the machines in order within a reasonable time; and that Feary allowed the company a sufficient time for

a person to be sent to put the machines in order. We think that finding of the jury is supported by the evidence.

It is true that the warranty provided that if, upon starting the machines, they should fail to work, the purchaser should give the agent a written notice. But it would seem that the written notice provided for by the warranty was not required to be given by the purchaser when the company or its agents started or tested the machines themselves. They were on the ground when the test was made; they knew that it failed to work; and that being the case, it would seem they were not entitled to a written notice of what they knew. But had the company been entitled to a written notice from Feary that the machines did not work, the company waived that when the agent was verbally notified by Feary on Wednesday evening that the machine did not work and he thereupon agreed to furnish a man to put it in order on Thursday morning.

The former opinion of this court, 34 Neb., 411, is overruled, and the judgment of the district court is

AFFIRMED.

NORVAL, C. J., not sitting.