The Aultman-Taylor Machinery Company, Appellant, v. A. Z. Ridenour.

**Warranty.** Where an order is for "A separator and twelve-horse Dingee power" and the warranty is "that with good management the machine is capable of doing a good business," there is a breach of warranty if the machine cannot be successfully operated with a power of twelve horses.

**Waiver.** One who orders a new machine and knowingly accepts one which has been used waives the objection that the machine is not new.

**Registered Letter Notice.** Facts stated which show that such notice was given through an agent of the seller.

*Appeal from Page District Court.*—Hon. W. S. Lewis, Judge.

Thursday, January 23, 1896.

Action in equity to recover judgment on four promissory notes, and for decree foreclosing a chattel mortgage on one Aultman-Taylor threshing machine, given to secure said notes. The defendant answered, admitting the execution of the notes and mortgage set out, and pleading as defenses, in substance, as follows: That said notes and mortgage were executed in consideration of the sale to him of said threshing

machine, which was to have been a new machine, and
suitable for doing a general threshing business. That
the machine shipped to him was a second-hand
machine, and of such heavy draft as to 'render it use-
less as a twelve-horse power, and only fit for use with
steam power.' That said machine was shipped to him
through Charles Ramsey, plaintiff's agent at Clarinda,
Iowa, under a written contract. That after depositing
said notes with said Charles Ramsey, plaintiff's agent,
defendant discovered that said machine had been
used, repaired, and repainted, whereupon he objected
to receiving said machine. That Ramsey represented
the machine to be all right; and that it was verbally
agreed between plaintiff and Ramsey that the notes
should not be turned over to plaintiff until the machine
had been tried and proved satisfactory to the defend-
ant. That defendant took the machine, and tried it,
and, not later than the third day thereafter, informed
Ramsey that the machine was not satisfactory,—was
not suitable for the purpose for which it was
purchased. That he offered to return the machine to
Ramsey, and demanded the return of said notes, and
that Ramsey refused to receive the machine or to sur-
render the notes; wherefore defendant says plaintiff
is not the lawful owner or holder of said notes. That
Ramsey, in disregard of said verbal contract, delivered
said notes to the plaintiff, to defendant's damage in
the sum of six hundred and thirty dollars. Defendant
alleges that his signature to said contract of purchase
was procured by a conspiracy of plaintiff's officers and
Ramsey, by false and fraudulent pretenses, to foist upon
him a defective and comparatively worthless machine.
That plaintiff waived the provisions of said written
contract of purchase requiring notice by registered
letter of defects in the machine, by sending an agent
to attempt to repair the same. Defendant prays that
said contract of purchase be declared void; that he

have judgment for the return of said notes, and for one thousand one hundred and thirty dollars. Plaintiff, in reply, denies every allegation of the answer not expressly admitted, and admits that defendant purchased the machine under the written contract mentioned; that he received the machine of Ramsey, and complained to him afterwards of the manner in which it operated. Plaintiff avers that the machine was purchased and delivered, and that said notes and mortgage were executed and delivered under said written contract, and that the machine fully complied with the warranty in said contract; that defendant failed to give notice to plaintiff of any shortage, or of any defects in or failure of the machine to satisfy the warranty, as required by said contract. Plaintiff avers that said written contract prohibits any agent from making any other agreement outside thereof, and that defendant agreed therein that such should not be done, and that no visit of any agent to repair said machine should alter or waive the agreement as to notice by registered letter. That defendant accepted and used said machine under said contract, without giving notice to plaintiff by registered letter, and that the machine failed to operate well by reason of defendant's neglect and want of proper management. Plaintiff alleges that on August 9, 1894, defendant wrote plaintiff, after trying said machine, that it was in good shape, and after that made no complaint or objection, wherefore plaintiff says he is estopped from now complaining. The case was tried to the court, and decree entered in favor of the defendant. Plaintiff appeals.— *Affirmed.*

*T. E. Clark* for appellant.

*G. I. Miller* and *C. S. Keenan* for appellee.

Given, J.—I. The written contract under which
the defendant purchased the machine was in the form
of an order from him to the defendant, for "one of
your No. 9 establishment, consisting of 32 by 44 globe
separator and 12 horse dingee horse power, equalizers,
grain register, flax and timothy sieves, and all attach-
ment per price list. This certifies that the undersigned
agrees to receive the above-described machine 'on
arrival, subject to the conditions of the warranty and
agreements printed below." Then follows the agree-
ment that the same was to be paid for by executing
the notes in suit. It is also provided that plaintiff "is
not to recognize or be in any way bound for any agree-
ments or specifications not noted on the order." The
instrument contains the following warranty: "That
with good management the Aultman-Taylor thresher
is capable of doing a good business in threshing grain
and cleaning grain, and is superior in its adaptations
to separating and saving from the straw the various
kinds and conditions of grains and seeds." It is pro-
vided that the sale is "subject fully and solely and only
to the warranty 'printed below," which is just quoted.
Immediately following the warranty are the following
provisions: "Conditioned that the undersigned
purchaser shall intelligently follow the printed hints,
rules and directions of the manufacturers, and if, by so
doing, they are unable to make it work well, written
notice stating wherein it fails to satisfy the warranty
is to be given by the purchaser to the Aultman-Taylor
Machinery Company, Mansfield, Ohio, by registered
lettter, within ten days after the delivery of the
machine to the purchaser, and reasonable time
allowed to get to it and remedy the defect, unless it be
of such nature that they can advise by letter. If they
are unable to make it operate well, the purchaser
rendering necessary and friendly assistance, and the

fault is in the machine, it is to be taken back, and the payment refunded or the defective part remedied and made the same as in their other machines, which do perform satisfactorily; but if the purchaser fail to make it perform through improper management or neglect to observe the printed directions, also that if any part of said machine, except the levers and belting fail during this year, in consequence of any defect in the material of said part, the Aultman-Taylor Machinery Company are to furnish a duplicate of said part free of charge, except freight, after the presentation of the defective piece, clearly showing a flaw in the material, at any time within one year; but deficiencies in general adaptation for threshing, separating, and cleaning, which alone involve the operation or taking back of the machine, must be reported by registered letter to the Aultman-Taylor Machinery Company, at Mansfield, Ohio, within ten days after the delivery of it to the purchaser; otherwise, all claims whatever are expressly waived by the purchaser. It is agreed as an essential part of the warranties, that the plaintiff should give his notes upon the delivery of the machine, and "that in every case where the required registered letter notice or notices set forth in the above warranties are not given strictly as provided, the Aultman-Taylor Machinery Company shall be released and discharged from all claims and obligations of every nature, under the warranties; and no visit of said company or any of its representatives may make to said machinery, and no assistance it or any of its representatives may render the purchaser in operating said machinery, nor any act of its representatives, shall in any way renew or revive the warranty or warranties, or create any new liability or obligation on the part of said company."

II.   The only complaints made by the defendant as to the machine are that it "had been used and had

been repaired and repainted," and that "it was found to have a draft so heavy as to render it entirely useless as a twelve horse power." While the order was not expressly for a new machine, it was not for one that had been used. It is not questioned that the order was for a new machine. A number of persons examined the machine after its arrival at Clarinda, and before and after its delivery to the defendant. A number of these persons testify that the machine had been used and repainted, but it does not appear that it had been otherwise repaired in any material part, nor that the use had been to such an extent as to impair the value of the machine. The defendant admits that he knew it had been used and repainted before he received it from plaintiff's local agent at Clarinda. Having taken the machine with this knowledge, he must be taken to have waived any objection to it upon that ground.

The order was for a "twelve horse dingee horse power," and the effect of the warranty is that with that power the machine would do a good business in threshing and cleaning grain when properly handled. There is no evidence that the machine was not properly handled, but there is evidence showing quite satisfactorily that it requires power of more than twelve horses to operate this machine successfully,—a fact that the defendant only learned after taking and operating the machine for three days. Defendant testifies that, after trying the machine for three days, he went to town, to notify the company; that he got Ramsey, the company's agent, to write a letter telling the company that he could not run the machine with horse power, as it ran too heavy. He says on cross-examination: "I saw the registered letter wrote, and signed my name to it, and left it there with Ramsey. I did not see him register it. I don't know whether he ever registered it or not.

He claimed that he would. He put it in an envelope, and sealed it up. In it it specified that the machine was not what it was claimed to be, and was not right. I heard it read. Don't recall the exact words. He worded it. It specified my objections to the machine, that it was not running right, and that we could not make it run. I left it with Ramsey. He was doing it for me. Formerly he was the company's agent. He was supposed to be my agent too. Won't say positive. He should be, if he is not. I think he was. I gave him the money. He agreed to mail it. ' I gave him ten cents." C. F. McPherrin testifies that there was a letter written by Ramsey, and read to the defendant, "notifying the company that the machine was not satisfactory, and he wanted them to send a man down here, and Ridenour signed it. I heard Mr. Ramsey read it to him before he sent it." Ramsey testifies that defendant talked to him about sending a letter to the company complaining of the manner in which the machine worked, but that he never wrote any letter, and never sent any letter given to him by defendant. He says: "I think I telephoned the company or wrote them to send a man here. I don't remember which, but I notified them. I notified them that Ridenour was complaining of the machine, and to send a man here to see about it." The plaintiff offered no evidence to show that a registered letter was not received, and we think the evidence warrants the conclusion that a letter was written and signed, as claimed by the defendant, and that Ramsey registered and mailed that letter, as he had agreed to do. This, we think, was a substantial compliance with the contract so far as written notice by registered letter was required. We are confirmed in this conclusion by the fact that one of plaintiff's agents did appear and attempt to put the machine in order. It is said that there is no evidence that the machine did

not operate satisfactorily thereafter, or that any further notice was given. It does not appear that this agent did anything to lessen the amount of power required to operate the machine. The defendant gave to that agent a writing dated August 9, 1893, addressed to plaintiff, saying: "Your man McKay has been here, and put my power in good shape, for which we believe will now run in good shape." Notwithstanding the power had been put in good shape, the fact remained that the machine could not be operated successfully with the power of twelve horses, and therein, we think, there was a clear breach of the warranty. The evidence shows without question that at the time the letter was written, and repeatedly thereafter, the defendant offered to return the machine on the surrender of his notes, and in his answer he again tenders to the plaintiff said machine. The district court found that the equities were with the defendant, and decreed that the plaintiff should take nothing under the notes and chattel mortgage sued on, and that the same should be canceled, and that the plaintiff was the owner of and entitled to the possession of the machine. This decree accords with our view of the equities of the case, and therefore other issues joined in the pleadings and discussed need not here be considered. Our conclusion is that the decree of the district court should be *affirmed*.