| 128 | 413' |
| f133 | 662; |
| 128 | 413 |
| 135 | 717 |
| 128 | 413 |
| 143 | 369 |
| 144 | 534 |
| 144 | 535 |

FIRST NATIONAL BANK OF WEBSTER CITY, IOWA, Appellee,
v. WILLIAM J. DUTCHER, Appellee, and the PLANO
MANUFACTURING COMPANY, Defendant in Cross Bill
Filed by WILLIAM J. DUTCHER, Appellant.

Sales: BREACH OF WARRANTY. Where. the evidence is conflicting
1 regarding a breach of warranty, the issue should be submitted
to the jury. .

Notice of defects: WAIVER. Where the warranty under which a
2 machine was sold required the purchaser to notify the seller
by registered letter of any defects within two days of its first
use, the continuous efforts of agents of the seller to make the
machine work, after the expiration of the two days and with-
out objection that the notice had not been given, amounted
to a waiver of the notice, and a submission of the issue of
breach of warranty was proper, even though under a possibly
erroneous instruction that an unregistered notice within the
time, duly received, was .sufficient.

Authority of agent to waive conditions. ·An agent having authority
3 to sell a machine under a contract containing conditions for
the benefit of the seller, has authority to bind his principal by
a waiver of such conditions; nor is his authority limited by a
general provision in the contract that no person has power to
"add to, abridge or change this warranty."

Return of property: REASONABLE TIME. Under the contract for the
4 sale of a machine which fixed no definite time, for its return
upon a failure to comply with the warranty, the evidence is
reviewed and held not to warrant the court in saying as a mat-
ter of law that the return was not within a reasonable time.

Rescission. Under the record it is held that the court could not
5 say as a matter of law that the purchaser had lost his right to
rescind the contract by a·continued use of the machine.

Contract of sale: CONSTRUCTION. The provisions in a contract of
6 sale prepared by the seller and limiting his liability under the
warranty are to be strictly construed against him.

Breach of warranty: REMEDY. The purchaser of a machine under
7' a contract of warranty fixing no definite time for its return
upon a failure to work, may return the same within a reason-
able time after the seller's agents have ceased their efforts to

make it work, and he is not limited to an action for damages for a breach of warranty.

**Parties: SURETY.** A contract for the sale of a machine was signed by a third person as surety for the buyer. Such surety was not made a party to an action on a note given for the purchase price, and the purchaser filed a cross-petition seeking damages from the seller for breach of warranty to which the surety appeared and disclaimed any interest in the machine or the cause of action for damages. Held, the surety was not a necessary party to the cross-petition.

**Suretyship: PAROL PROOF.** The fact that one of two apparently joint makers of a contract is in fact a surety may be shown by parol.

**Appeal from interlocutory order.** An appeal from an interlocutory order denying a trial in equity and the filing of a supersedeas bond, will not deprive the court of jurisdiction and render its judgment a nullity.

*Appeal from Hamilton District Court.*— HON. J. R. WHITAKER, Judge.

THURSDAY, JULY 13, 1905.

THE opinion states the case.— *Affirmed.*

*Wesley Martin,* for appellant.

*W. J. Covil,* for appellee First National Bank.

*A. N. Boeye,* for appellee William J. Dutcher.

WEAVER, J.— On September 9, 1901, the appellee William J. Dutcher, with his mother, Permelia L. Dutcher, as an alleged surety, entered into a written contract with the Plano Manufacturing Company for the purchase of a corn husking and shredding machine, manufactured by said company. The agreed price of the machine was $650, for which Dutcher executed several notes, one of which was assigned to the plaintiff bank before maturity and in due course of business. The bank having brought action to recover upon said note

from William J. Dutcher, he appeared thereto and filed a cross-petition, impleading the Plano Manufacturing Company. By this pleading it is alleged that the machine was purchased under a warranty, and, not complying therewith, the defendant had returned it and demanded of the plaintiff a surrender of the notes given by him for the purchase price, which demand was refused. It is also alleged that the notes have been transferred by the company to an innocent holder, against whom the defense based on the breach of warranty is unavailing. It is further shown that the warranty relied upon was in writing, and by its terms required the purchaser to give written notice to the company and its local agent, if, after two days' trial, the machine proved to be not as represented. The cross-petition alleges that this condition was in fact complied with; but it is also claimed that the several conditions upon which the warranty was made to depend were waived by the company and its agents, and that by their request and direction the appellee continued the use of the machine and the attempt to make it work successfully beyond the time mentioned in the contract. Damages are asked from the company for the full amount of the notes given for the purchase price, $650, and for freight paid upon the machine, $29.25, with interest. The manufacturing company admits the sale of the machine and the warranty thereof upon the terms stated in the writing, but denies that the said purchaser has performed the conditions thereof on his part, and denies that it has ever waived such performance.

In the principal case the bank recovered judgment against Dutcher for the full amount of the note sued upon, and from this judgment no appeal has been taken. On the issues joined upon the cross-petition there was a trial to a jury and verdict in favor of Dutcher and against the Plano Manufacturing Company in the sum of $750. From the judgment entered on this verdict the manufacturing company appeals. The appellant contends, first, that no breach of the warranty is shown by the record; and, second, that the record

discloses without controversy the failure of the appellee to comply with the conditions upon which the contract makes the effectiveness of the warranty depend.

I.   The proposition that the alleged breach of warranty is without support in the evidence cannot be maintained. The undertaking of the company was that the "machine is warranted to be of good material and workmanship, and, when properly adjusted and operated, to do good work." This is probably neither more nor less than the warranty, which in the absence of the writing the law would imply, that the machine was reasonably well made, of good material, and adapted to the uses and purposes for which it was constructed.

1. SALES: breach of warranty.

Without attempting to rehearse the testimony, we may say that, if the appellee and his witnesses are to be believed, the history of the attempt to operate the machine from the time it was started under the supervision of the appellant's agent until the experiment was finally abandoned was a continuous series of failures.   According to their story, though handled with ordinary care and skill, the machine was not only inefficient and incapable of turning out a reasonable amount of work, but the breaking of parts and consequent serious delays were a matter of daily occurrence.   True, the appellant's testimony tends to show that the machine worked with reasonable success, and that the breaks and failures complained of were, in a large degree at least, occasioned by negligence or want of skill on part of the appellee and his assistants; but the conflict thus presented was one of fact, and under familiar principles its determination was a question for the jury.

II.   The question most strenuously insisted upon in argument is whether there is sufficient evidence of a performance or waiver of the condition attached to the written warranty to justify the trial court in submitting the appellee's claim for damages to the jury.   The conditions pleaded in the company's an-

2. NOTICE OF DEFECTS: waiver.

swer, and upon which it relies to defeat the recovery upon the warranty, are contained in written contract or order given for the machine, and are as follows:

If, within two days from the time of its first use, the said machine shall fail in any respect to fill the warranty, written notice shall immediately be given by the purchaser to the Plano Manufacturing Company at Chicago, Illinois, by registered letter, and to the local agent through whom the same was ordered, stating wherein it fails to fill the warranty, and a reasonable time shall be given the Plano Manufacturing Company, and the agent through whom ordered, to send a competent person to remedy the difficulty; the purchaser to give the necessary and friendly assistance, and furnish the necessary material and power to start, operate, and test the machine, and help in general wherever it may be needed free of charge. . . . Possession or use of said machine after two days from the time of its first use, without giving notice as above, shall be conclusive evidence of the fulfillment of the warranty and full satisfaction to the purchaser.

Concerning the requirement for notice to the appellant, there was evidence from which the jury could find that, at the close of the second day's trial, the appellee did write and mail to the appellant's proper address an unregistered letter giving notice of his objections to the machine. It is argued that the failure to register the letter is such an omission as will in itself defeat any claim under the warranty. Upon this point the trial court instructed the jury that if the appellee within the required time mailed a letter to the appellant giving notice of the alleged defect in the machine, and the appellant did in fact receive the letter in due course of mail, then the failure to register was immaterial and the notice was sufficient.

Error is assigned upon the giving of this instruction. The rule stated by the trial court has more or less support in the cases. See *Advance Threser Co. v. Curd* (Ky.), 85 S. W. Rep. 690; *Badgett v. Frick*, 28 S. C. 176, 5 S. E.

Rep. 355; *Kenny v. Anderson* (Ky.), 81 S. W. Rep. 663; *Mach. Co. v. Ridenour,* 96 Iowa, 638; *Frick v. Morgan,* 24 Ky. 836, 69 S. W. Rep. 1072.

But under the conceded facts in this record we think that, even if erroneous, no prejudice to appellant could have resulted. It appears without dispute that the first two days' trial was had in the presence and with the personal assistance of the apellant's agent who sold the machine. That this trial was thought insufficient and unsatisfactory by both is evidenced by the fact that the agent continued with the machine, actively assisting and directing the effort to make it work, for much of the time covering a period of several weeks, when an expert employed by the appellant appeared and continued the experiment until within a short time before appellee returned the machine.

The agent to whom reference has been made was a member of a firm having charge of the appellant's local business at Webster City. He was also what he terms the " block man "; that is, he had the charge and oversight of appellant's business in a given territory, called a " block," comprising about one-fourth of the state, including Webster City. He says his duties in that capacity were various —" making settlements with local agents, furnishing repairs, taking notes, and selling machines and settling for them." The appellee testifies that Rood (the agent) sent the expert " from the Plano Company," and that such expert received letters from the company concerning the machine while he was working with it. These trials by the block man, the agent, and the expert must have covered very nearly the entire period during which the machine was in appellee's possession, and it is quite clear that he was induced to keep it and continue the endeavor to make it work by the encouragement, assurances, and requests of these different representatives of the appellant. All this was done after the expiration of the two-day limit for giving notice by the purchaser, and without any claim or objection that no notice had been given. Under

the uniform holdings of this court we must hold that the requirement for written notice after two days' use of the machine was waived, and there was no error in submitting the alleged breach of warranty to the finding of the jury. *Insurance Co. v. Dierks*, 43 Neb. 482, 61 N. W. Rep. 740; *Dean v. Nichols*, 95 Iowa, 89; *Davis v. Buttrick*, 68 Iowa, 98; *Peterson v. Wood*, 97 Iowa, 148; *Pitsinowsky v. Beardsley*, 37 Iowa, 9; *Massillon v. Shirmer*, 122 Iowa, 699; *Blaess v. Nichols*, 115 Iowa, 373; *McCormick v. Brower*, 94 Iowa, 144; *McCormick v. Russell*, 86 Iowa, 556; *Warder v. Robertson*, 75 Iowa, 585; *Briggs v. Rumely*, 96 Iowa, 202; 2 Mechem on Sales, section 1385; *Flatt v. Osborne*, 33 Minn. 98, 22 N. W. Rep. 440; *Sandwich v. Feary*, 40 Neb. 226, 58 N. W. Rep. 713; *Champion v. Mann*, 42 Kan. 372, 22 Pac. Rep. 417; *Springfield v. Kennedy* (Ind. App.), 34 N. E. Rep. 856; *Seiberling v. Newlon* (Ind. App.), 43 N. E. Rep. 151; *M. L. & T. Co. v. Welch*, 47 Minn. 183, 49 N. W. Rep. 740; *McCormick v. Machmuller*, 1 Neb. (unofficial) 80, 95 N. W. Rep. 507; *Parsons v. Gadeke*, 1 Neb. (unofficial) 605, 95 N. W. Rep. 850.

It is a well-settled rule that an agent having power and authority to sell a machine under a contract which contains conditions for the benefit of the seller has authority to bind

3. AUTHORITY OF AGENT TO WAIVE CONDITIONS.

his principal by a waiver of such conditions. *Pitsinowsky v. Beardsley*, supra; *Warder v. Robertson*, supra; *McCormick v. Brower*, 88 Iowa, 613; *Osborne v. Backer*, 81 Iowa, 375; *Peterson v. Machine Co.*, 97 Iowa, 148. The Peterson Case is also authority for the proposition that the personal knowledge of the agent that the machine sold by him fails to do good work renders unnecessary any written notice to him of such fact, although required by the strict terms of the contract of sale.

Nor is the application of this rule to be avoided by the clause of the contract providing that "no person has any authority to add to, abridge, or change this warranty in any manner." The proposition is entirely too broad and sweep-

ing to be effective.   *Osborne v. Backer,* supra; *Peterson v. Machine Co.,* supra.

The appellant is a corporation which can act only through agents and employés.   It cannot divest itself of the power to waive a condition made for its benefit, and that power can be exercised only through some agent.   These men were its servants, working in its interest, and must be presumed to have had the authority usually exercised by other agents under similar circumstances.   To say that its agents were vested with the mere naked power to sell and deliver, without any authority to waive or modify any term of the printed contract, would be, as is well said in the Pitsinowsky Case, " to establish a snare by which to entrap the unwary, and enable principals to reap the benefits flowing from the conduct of an agent in the transaction of business intrusted to his hands, without incurring any of the responsibilities connected therewith."   The stipulation in the contract which reserved the right to " the Plano Manufacturing Company, and the agent through whom ordered, to send a competent person to remedy the difficulty," is in itself a recognition of the authority of the agent to act in the premises.   Hence, when after the expiration of the two-day limit, the company or its agent exercised the right thus reserved to send its expert to take charge of the machine and to remedy its alleged defects, it is quite certain that this act, if not an admission of due notice, is sufficient under the authorities cited to uphold the plea that such limit was waived.

We may also say in this connection that as late as December 24, 1901, the appellee wrote a letter to the appellant informing it that its expert and agents had been laboring

**4. RETURN OF PROPERTY: reasonable time.** for weeks to make the machine do good work, but without success, and that they had requested him to " keep on " with the trial.   The letter further states his discouragement and dissatisfaction with the results produced, but offers to persevere in the trial, if

the company will remedy the defects complained of. This letter was answered by the appellant under date of December 28th. In this answer it in no manner disavows or repudiates the acts of its agents or expert, but proceeds to give directions and advice concerning the management of the shredder. The correspondence thus disclosed is a significant circumstance, indicating that appellant's representatives were acting with its knowledge and approval. Within a few days after the receipt of this letter the appellee returned the machine to the agent's warehouse in Webster City. Was the return too late to comply with the terms of the contract?. The contract provided no specific limit of time in which the return should be made. It did provide that if, after notice of the failure of the machine to work as warranted and opportunity given to the appellant and its agent to send a competent person to remedy the defects, the machine still failed to satisfy the warranty, it was to be returned by the purchaser to the place where he received it. Now, so long as the appellant's agents and experts continued to work with the machine and hold out encouragement to the appellee that it would be made as warranted, we think he was justified in postponing its return. *Gaar-Scott Co. v. Stark* (Tenn. Ch.) 36 S. W. Rep. 149; *Wood v. Calvert,* 89 Wis. 640 (62 N. W. Rep. 532). Those efforts continued down to within a short time before the return was actually made. About this time appellee, as we have seen, addressed the company directly, rehearsing his troubles with the machine, and asking that some one be sent direct from the house to see it and make it good if possible. The answer was of a character to invite still further trial, and we cannot say as a matter of law that the return of the machine five days later was not in reasonable time. *Warder v. Horne,* 110 Iowa, 285; *McCormick v. Russell,* 86 Iowa, 556.

Counsel argue with much earnestness that appellee kept and used the machine long after he had fully concluded it was not as warranted, and after he had made up his mind

to return it.    If this be so, then counsel is undoubtedly cor-
rect in saying that the right to rescind was
**5. RESCISSION.**
lost.    But for this court to say that such fact
is established would be to invade the province of the jury.
Taking some isolated sentences or expressions from the testi-
mony of the appellee, this charge of duplicity may have some
support; but, viewing it as a whole and looking to his entire
story, with the corroboration afforded by facts and circum-
stances developed on the trial, we think the jury could fairly
find that he acted in good faith, and that the continued trial
of the machine was induced by the conduct and assurances
of appellant's representatives.    Indeed, we see no good rea-
son to doubt that the protracted experimentation with the
machine was persisted in by both parties in an honest desire
to give it a thorough and fair trial.    That appellee began
to have doubts as to its successful operation soon after the
work began may be admitted.    Certain it is he was not satis-
fied with it; and that he had good reason for dissatisfaction
is demonstrated by the appellant's continued and unremitting
efforts to remove the ground of his objection.    But his dis-
satisfaction is not inconsistent with the continuation of the
trial in good faith to give the appellant and its agents the
amplest opportunity to make good the warranty.    Indeed,
so far as the record discloses, there was no apparent reason
or inducement for the appellee to continue the use of the
machine while secretly intending to return it.    There is no
showing that its operation was attended with any profit to
him; but, on the contrary, the evidence indicates that it was
productive only of loss.

Counsel's assumption that appellee, after refusing to
give security upon his notes pursuant to a demand made on
January 2, 1902, and after announcing his intention to
return the machine, continued to use it, is not
**6. CONTRACT OF**
**SALE: con-**     borne out by the record.    At least, such propo-
**struction.**
sition is not undisputed.    Indeed, the work
performed on the day named seems to have been done at the

request of appellant's agent, and, if so, it would not deprive appellee of his right to rescind.   The rights of the appellant were fairly guarded by the instructions of the court, and in this respect, as well as in those which have already been considered, the verdict is sustained by the evidence.   It is to be remembered that the conditions attached to the warranty are framed by the seller to limit his liability and restrict the benefit thereof to the buyer.   It is a settled rule that such conditions are to be strictly construed against the party in whose interest they are made.   *Parsons v. Gadeke*, 1 Neb. (unofficial) 605, 95 N. W. Rep. 850; *Meyer v. Fidelity*, 96 Iowa, 385.

III.   It is contended that, conceding the alleged waiver of the written notice of failure of warranty, appellee had no right to return the machine, and that his only remedy was in an action for damages.   Such is not our view of the rights of the parties under their contract. · Without again reciting its language we may say in general terms that it provides for a notice to be given, following which the appellant is to have reasonable time to remedy the defects, and upon failure so to do the appellee may then return the machine.   The time when the right to return must be exercised depends upon the expiration of the period in which the appellant might rightfully continue its efforts to make the machine conform to the warranty.   It did not necessarily depend upon the giving of the notice; for the parties could waive the notice and the appellant proceed with its attempt to remedy the defects for a reasonable period, or so long as the parties should mutually consent thereto.   The waiver of the notice has no effect upon the stipulation for a return; for that right, as we have seen, accrues only when the appellant has ceased its endeavor to remedy the defect and has failed so to do.   The appellant did not in fact relinquish its attempt to make this machine work until a very short time before appellee returned it, and

7. BREACH OF
WARRANTY:
remedy.

whether the return was made within a reasonable time there-after was for the jury to determine.

IV. To the appellee's cross-petition the appellant pleaded in abatement that Permelia J. Dutcher, who executed the contract of purchase with William J. Dutcher, was

8. PARTIES: surety.

a necessary party to the determination of the matters stated in the cross-petition, and not being a defendant in the main action, and therefore not entitled to unite in the cross-petition, it should be dismissed. The appellee alleged that said Permelia J. Dutcher signed the order or contract for the machine as surety only, and was in no manner interested in the matters in controversy, save as such surety. The proof offered on the trial sustains the appellee's allegation in this respect, without controversy. Permelia J. Dutcher also appeared and filed a pleading disclaiming any interest in the machine or in the cause of action set up in the cross-petition. Under this state of record the plea in abatement cannot be upheld. That, in an action upon a promissory note brought by an innocent holder, the maker may by cross-petition implead the payee and recover from him upon a cause of action growing out of the transaction in which the note was given, and which might have been the subject of set-off or counterclaim, were the principal action brought by such payee, has been decided by this court. *Bank v. Christ,* 82 Iowa, 56; *Id.,* 87 Iowa, 415.

If, then, the defendant Dutcher was in fact the purchaser of the machine, and as between him and his mother she was surety only, we think there is no rule of law which

9. SURETYSHIP: parol proof.

prohibits the pleading and proof of that fact. In an action brought by the seller upon the contract, it is possible that the rule which prohibits parol testimony to vary the terms of a written agreement would prevent the pleading or proof of such suretyship to the prejudice of the seller. The plaintiff in such case would have the right to rely upon the writing as executed; but, in so far as the relation of the two apparently joint purchasers to each other

is concerned, it is always competent to show that one of them stands in the relation of surety to the other. This is true, even after judgment has been entered against both as principals. *Atlee v. Bullard,* 123 Iowa, 274; *Hill v. King,* 48 Ohio St. 75, 26 N: E. Rep. 988.

If the appellant had any interest in having Permelia J. Dutcher made a party to the controversy, it was to protect itself against any possible claim by her in another action founded upon the same breach of warranty. Therefore, when she voluntarily appeared and put herself on record as disclaiming all right and interest in the matter, we think the plea in abatement ceased to have merit.

V. When the pleadings were finally settled, and before trial was begun, the appellant moved to have the cause set down for trial as an equitable action. This motion was overruled, and the appellant appealed from said 10. APPEAL FROM INTER-LOCUTORY ORDER. order and filed a supersedeas bond. This it is said deprived the court of jurisdiction to proceed with the trial to a jury, and the judgment rendered upon the verdict is therefore void. The order appealed from was self-executing, requiring no writ or process of any kind to carry it into effect. There was nothing to supersede by the givng of a bond, and the filing of such an instrument could have no effect to deprive the court of jurisdiction to proceed with the trial. See second paragraph of the opinion in *Allen v. Church,* 101 Iowa, 123. To hold otherwise, and say that by appealing from an interlocutory ruling a party may deprive the trial court of jurisdiction to take any further step in the case until in the slow course of appellate procedure it is remanded, only to begin another round through the appellate tribunal from the next adverse ruling, would be to deprive courts of the power to administer substantial justice and prolong litigation until *Jarndyce v. Jarndyce* would cease to be any exaggeration of the law's delay. Of course, the party who proceeds with a case after his adversary has taken an interlocutory appeal assumes the risk of the effect which

an adverse decision by the appellate court may have upon his rights; but that risk is often preferable to waiting until time and change have deprived the main issue of significance and value. There is little to choose between indefinite delay and absolute denial of right. Owing to variance in the terms of the practice acts in the several States, we do not derive much aid from decided cases in determining to what extent an appeal from an interlocutory order affects the jurisdiction of the trial court. But, as affording more or less direct support to the conclusion we have announced, see *People v. Whitney,* 47 Cal. 588; *Ford v. David,* 3 Abb. Prac. 385; *Fisk v. Railroad,* 41 How. Prac. 365; *Bramley v. Tyree,* 69 Tenn. 531; *Barrow v. Rhinehander,* 3 Johns. Ch. 120; *Gorham v. Farson,* 18 Ill. App. 520; *State v. Judge,* 17 La. 511; *Forbes v. Tuckerman,* 115 Mass. 115; *Barker v. Wing,* 58 Barb. 73; *Henry v. Henry,* 4 Dem. Sur. (N. Y.) 253; *Sheaffer's Appeal,* 100 Pa. 379; *Barton v. Long,* 45 N. J. Eq. 161, 16 Atl. Rep. 683; *Insurance Co. v. Lemar,* 10 Paige, 505.

It should be said in this connection that, in any case where an interlocutory appeal is taken from some ruling not involving the merits of the controversy and not subject to supersedeas under the statute, the trial court doubtless has the inherent power to order a stay of proceedings pending the disposition of the appeal, either upon its own motion or upon application by a party. No such order was asked in this case. The only question raised is one of jurisdiction.

Other errors are assigned, but none, except those to which we have referred, are argued. We have, however, examined the entire record in the light of the points thus made, and find no prejudicial error.

The judgment of the district court is *affirmed.*