# WILLIAM R. HUEY

### *v.*

## BILLINGS GRINNELL, Administrator, etc., *et al.*

1. ABANDONMENT OF CONTRACT—*waiver of right to enforce it.* Where a party to a contract manifests an intention to abandon it, by suing for and recovering money which he has paid thereon, he cannot be permitted afterwards to treat the contract as in force, and insist upon its performance by the other party.

2. So, where A and B, each claiming the better right to a tract of land, entered into an agreement that he who should be found to have the better title should convey to the other one half of the land, and receive therefor a stipulated sum of money, A agreeing to pay to B a certain sum for improvements made by B upon the portion which was to be allotted to A: *Held*, that this was one entire agreement, and the recovery by B against the estate of A, who had died before the agreement was performed, the sum so agreed to be paid for the improvements, will be treated as an abandonment of the contract by B, and preclude him from afterwards insisting upon a conveyance of one half of the land by the representatives of A, who had perfected their title thereto.

APPEAL from the Circuit Court of Clinton county; the Hon. SILAS L. BRYAN, Judge, presiding.

The facts are fully stated in the opinion.

Messrs. O'MELVENY & LANSDEN, for the appellant.

Mr. WILLIAM H. UNDERWOOD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill for a specific performance, filed by appellant, in the Clinton Circuit Court, against appellees. The bill alleges that appellant, in the year 1857, was in the occupancy of the northeast quarter of the northeast quarter of section 22, township 2 north, range 2 west, and believing that his brother James was the owner, and had derived a good title from the Illinois Central Railroad, he purchased the land from his brother, but that afterwards Simeon L. Barce claimed that he had purchased the land from the company, and to settle and close the dispute they entered into a written agreement, which has been lost, in substance as follows : "That if Barce acquired title to the land from the railroad company, and in consideration that Huey would pay to him one-half the purchase money, to wit: $280, he agreed to deed to Huey the west half of said tract; and if said Huey succeeded in establishing a prior title thereto, then Barce was to give Huey $280, and he was to convey to Barce the east half of said tract. And the said Barce further agreed, in consideration of the improvements and fence rails enclosing said land, (all of which had been done by Huey), to pay to Huey $100, for the rails around said east half."

That in 1865, appellant and Barce made a verbal partition of the land and agreed upon the boundaries between them, and each entered into actual possession of his respective share, and they so continued to occupy the premises, and

appellant made valuable improvements on his half. That Barce departed this life in 1866, before completing the payment for the land; that appellant presented his account against the estate of Barce for the fence and rails, amounting to $160, which was allowed. He alleges that $20 of that sum was for interest and $40 was to compel the administrators to produce the agreement.

It also alleges that appellees afterwards, on the 8th day of November, 1866, paid the railroad company for the land and obtained a deed; that appellant, soon after the deed was recorded, requested the administrators to convey the west half of the land to him, but they declined because of the want of power; that in March, 1867, he tendered a deed for the east half to the heirs of Barce; that appellees insist that by filing his claim against Barce's estate he has waived his claim.

The administrators answered, and deny knowledge of complainant's claim, except as stated in the bill. They admit that Barce purchased and paid for the land; admit that since 1865, the boundary between the east and west halves has been recognized, and the parties have been in possession accordingly, cultivating the same; but deny that appellant made valuable improvements, except a cross fence; that Barce died, leaving widow and heirs. The answer sets up and claims that appellant, by his voluntary appearance before the probate court and having his claim allowed, abandoned his claim to the land. The answer denies that appellant ever offered to refund any portion of the interest paid by the deceased on his contract with the railroad company, or to pay any part of the $280; admit a demand of a deed, but deny that he is entitled in equity to a conveyance. The guardian *ad litem* also filed an answer, denying the allegations of the bill.

The evidence proves that there was some kind of a controversy in regard to this land, and that it was adjusted by an agreement to divide it, perfect the title and then execute such deeds as might be necessary to vest in each the title to

his half. If it turned out that appellant held the title, then Barce was to pay him $280 for the title and $100 for the fence on his half. If, however, Barce should prove to be the rightful purchaser, appellant was to pay him the same sum and to receive $100 for the fence on Barce's half. Although the evidence is somewhat conflicting, we infer that this was the understanding of the parties when the arrangement was made, and it also seems that appellant was to make a partition fence, and all of the witnesses but one, say they do not know how it was to be paid for or by whom. But Winningham says that by the agreement, Barce was to pay for half of it. The evidence is not explicit as to how appellant was to be paid for the fence if he should have to pay Barce for half of the land, but we think it may be safely inferred, that in that event its price was to constitute that amount of the sum to be paid to Barce. It is so stated by one witness and is not contradicted by other evidence.

That the payment for these rails was provided for in the agreement, there seems to be no doubt, and that the arrangement in reference to them, entered into and formed a part of the agreement, there seems to be no question. If Barce had to pay for the land to the railroad company, then he was to deduct the price of the rails from appellant's half of the purchase money. In that event the rails became the property of Barce and they were paid for by paying the railroad company for the land, and the hundred dollars he was to allow for them also became a payment of that amount on the half of the purchase money to be paid to appellant. How this can be claimed to be a separate, independent agreement, we are unable to comprehend. It is a part of the principal agreement and depended upon that agreement to determine its operation and effect, and by filing his account in the probate court, based upon this separate part of the agreement, appellant seems unmistakably to have abandoned the entire agreement. Instead of relying upon obtaining compensation for his rails as a part payment on the land, he endeavored to obtain

payment in another mode, outside and independent of the contract. The account would seem to have been filed because he expected to furnish no portion of the purchase money to pay the railroad company, or to refund it to Barce's heirs if they should pay for the land and acquire the title. He does not show that he had title, or even supposed he had title, to the land at the time of Barce's death, or at the time he filed his account. He seems, so far as we can see from this record, not to have given himself any further concern about the land after Barce's death, or even, in fact, after the agreement was made. He did not, so far as the evidence discloses, offer to pay out his half, less the sum he was to receive for the rails, and secure the title to the land. But we must conclude that he supposed the title would never be perfected, and hence filed his account to obtain what he could out of the contract. His act, unexplained by surrounding circumstances, would seem to bear no other construction.

It is, however, urged, that by filing his claim and having it allowed, he only desired to have it liquidated and recognized, and prevent it from being barred by the statute of limitations. We do not think the act warrants such an inference. There is no such statement on the account in the record of the county court, or proved to have been made at the time he filed his account. Had such been his intention, it seems to us, that such intention would have been declared in some mode. The manner in which he filed his account is the same as that of all others presented for allowance in the probate court, nor can he, now that the heirs of Barce have placed themselves in a position that they could be compelled to perform their father's agreement, change his mind and give to the contract he then abandoned, new force and vitality by his own act alone. Having elected to terminate and abandon the contract, he is precluded from insisting upon its enforcement.

In the case of *Herrington* v. *Hubbard*, 1 Scam. 569, it was held, that when a party to an agreement treats it as rescinded, he cannot afterwards insist upon a specific performance, and

it was held that he treated it as rescinded by suing to recover back the instalments paid by him on the contract, and in that case the suit for such recovery did not terminate in a final judgment, as the suit was dismissed by the plaintiff. That case goes farther than it is necessary in this, as there was no recovery and the suits at law were abandoned, while in this case the claim was prosecuted to a final termination and judgment of allowance against the estate. But the principle is the same in both. It is a question of intention, and the commencement of the suit showed that the party regarded the contract as rescinded, by suing to recover back payments made under the contract; and when appellant in this case filed his account and recovered the value of the rails which were by the agreement to be a payment towards the purchase of one half of the land from Barce, it produced precisely the same effect as if the suit had been to recover back the purchase money paid under an agreement to convey the land. For these reasons we are of the opinion that the decree of the court below must be affirmed.

*Decree affirmed.*