F. A. Henriott, Appellee, v. W. F. Main, Appellant.

No. 43824.

April 5, 1938.

Rehearing Denied December 16, 1938.

Geo. C. Claassen and E. A. Johnson, for appellant.

Floyd Philbrick, for appellee.

MITCHELL, J.—W. F. Main operates under the name of Standard Manufacturing Company at Cedar Rapids, Iowa, and in 1932 and subsequent thereto was engaged in the sale of merchandising vending machines. On April 12, 1932, F. A. Henriott, who lived in Louisville, Kentucky, purchased from Main, thru his salesman, forty vending machines and twenty pounds of confection, for the sum of $1,156.40. A guarantee, in writing, guaranteed a cash return of 120 per cent from the operation of the vending machines for a period of twelve months from date, and if the machines did not produce this much the amount paid, plus interest, would be refunded. The machines were delivered, were located in the territory provided, to wit, in Louisville, Kentucky, and were operated for the required time. According to plaintiff, the purchaser, the total income was $320.91. He notified the defendant in regard to this and offered to ship back the machines. In writing he was notified not to do so. Defendant having refused to pay the amount of money to which plaintiff felt he was entitled under the contract, to wit, the purchase price plus interest after the allowance of credit because of the amount made in the operation of the machines, plaintiff commenced this action. The case was tried to a jury, which returned a verdict in the amount of $1,021.11. Defendant, being dissatisfied, has appealed.

We turn to the record to ascertain the facts.

W. F. Main is an individual engaged in the business of selling penny vending machines, operating his said business under the trade name of Standard Manufacturing Company. F. A. Henriott lives at Louisville, Kentucky. A salesman for

Main contacted Henriott, and after some negotiations sold him forty vending machines at the price of $29.50 each. Two per cent was allowed for cash with the order and Henriott paid the sum of $1,156.40. With the vending machines went a certain amount of confection used in same.

The contract is so unusual and the defenses relied upon by appellant to escape payment so closely connected with the contract, that we set out the essential parts of it:

"STANDARD MANUFACTURING COMPANY,
    "CEDAR RAPIDS, IOWA.

\* \* \*

"April 12, 1932.

"Total 40 units @ $29.50
    .....................$118.00

| "To F. A. Henriott | 709 Sutcliffe Ave., | Louisville |
|---|---|---|
|  | Street | Town |
| "State      Texas | Freight | Engineer |
|  | How to ship | Business |

"TERMS: $1156.40 check or draft in advance............
"2% off check or draft in full with order.
"Transportation charges to be paid by purchaser.
"All sums due under this agreement are payable at
    Cedar Rapids, Iowa.

"The Standard Mfg. Co. guarantees a cash return of 120% on the investment in the above machines from the operation of same on a vending machine route for a period of twelve months from the date they have been placed in operation by the purchaser, if the purchaser will buy from this company all the products to be vended through the machines and will keep the machines at all times in good working order, clean and attractive in appearance, and well filled with the above products and adjusted to vend at an average price to the consumer of 70¢ to 85¢ per pound, and will rotate the different kinds of products so as to make available to the public the different kinds, flavors and assortments thereby making the machines more profitable, and will notify the company at once giving dates, names and addresses of all original locations and changes in locations of machines in order to keep them operating in the most profitable

places, and furnish to the company at its offices in Cedar Rapids, Iowa, every six weeks, a report showing the name and address of the person with whom machines are placed, the dates serviced, the amount and kinds of products vended, the amount of money taken by each machine so that the company will know just what the machines are doing and will continuously operate the route with proper care and diligence. If the above provisions are complied with and if the above named cash return resulting from the operation of the above machines for the twelve months period is less than 120% and if all of the machines are delivered within thirty days after the expiration of said twelve months period to the Std. Mfg. Co. at Cedar Rapids, Iowa, transportation charges prepaid, securely packed and good condition, this company upon receipt of the machines will re-purchase the above machines at the full purchase price paid therefore, plus 6% interest, less the retail price of the products vended after deduction of 20% thereof to cover location rental. The term 'cash return' as used above is understood to mean the total cash realized from the sale of the products vended less the purchase price of the products vended and the 20% paid for location rental. Purchaser agrees that in the event any machine gets out of order to promptly notify the company for repair and replacement. All of the above provisions are construed as constituting a single agreement and not independent agreements, and are of the essence of the repurchase agreement. * * *

"Name of Firm.......................................

"Signature of Purchaser      F. A. Henriott

"Signature of party signing for above..................

"Accepted at Cedar Rapids, Iowa, this 5th day of May, 1932.

"STANDARD MANUFACTURING COMPANY
"By      E. L. Weidner, Manager.

"Salesman      Louis Okin."

I. Appellant contends that the court erred in overruling the motion for a directed verdict made at the close of the evidence. It is his contention that there are enumerated in the contract certain conditions precedent which had to be performed in order to require him to repurchase the machines. The contract was prepared by appellant. A reading of it will convince

anyone that it was prepared with the one thought in mind of limiting appellant's liability and making it almost impossible to recover the amount of money he promised to pay in case the machines did not show the profit of 120 per cent within the year. In view of such a situation the contract will be construed most strongly against him.

As said by the late Justice Weaver in the case of First National Bank v. Dutcher, 128 Iowa 413, at page 423, 104 N. W. 497, 500, 1 L. R. A. (N. S.) 142:

"It is to be remembered that the conditions attached to the warranty are framed by the seller to limit his liability and restrict the benefit thereof to the buyer. It is a settled rule that such conditions are to be strictly construed against the party in whose interest they are made. Parsons v. Gadeke, 1 Neb. (unofficial) 605, 95 N. W. 850; Meyer v. Fidelity, 96 Iowa 385, 65 N. W. 328, 59 Am. St. Rep. 374."

II. It is contended that one of the important conditions of the contract was that Henriott was "continuously to operate the route with proper care and diligence" and that he failed to do this; that he failed to keep the machines in proper condition; that they were not washed and cleaned as they should have been; that the locations were not good; that he did not change locations, as he should have; that he did not set the machines so that they would dispense a certain amount; that the machines could be so fixed that upon the insertion of a coin they would give a certain amount of confection and Henriott gave more than he should have, selling the merchandise on the basis of 72 cents a pound rather than on a basis of 80 cents a pound.

This was the main defense relied upon at all times up until this lawsuit was commenced. All of the other technical defenses and claims that will hereinafter be referred to were never urged or set forth in any of the correspondence had between these parties, until the time that appellee sought to recover his money by commencing this action. Both sides offered evidence in regard to this matter. It was purely a fact question. Upon reading the evidence, one cannot see how the jury could come to any other conclusion than that it did reach, and that appellee had operated the machines in a diligent and careful manner.

III. Another of the conditions placed in the contract by the appellant is that appellee "was to operate the above ma-

chines on a vending machine route for a period of twelve months from the date they had been placed in operation by the purchaser.'' There were forty machines sold and delivered. On December 7, 1932, appellee advised appellant that two of his machines had disappeared and one was robbed. In the spring of 1933 he reported another machine missing. It is now the claim of the appellant that he would only repay the 120 per cent provided there were forty machines operated during the period of a year, and that because appellee now admits he only operated thirty-seven machines during that period he cannot recover. Appellant says this is important because he contracted he would guarantee the forty machines would take in 120 per cent and not that thirty-seven machines would do it.

This question was never raised until the time of the trial. This was not the basis of the refusal of appellant to accept the return of these machines when appellee offered them to him. In addition to that, we find in the record that appellee wrote a letter to appellant, asking that he advise what effect it would have upon his contract if two or three machines were disposed of. On October 27, 1932, appellant answered. We quote part of the letter:

''It has ordinarily been the custom of claimants who have either had machines stolen or sold them to deduct the amount paid for such machines from the amount of their claim when such a situation has developed.''

This, we believe, is a practical construction placed upon the contract by appellant.

In the case of Dodds Co. v. Consolidated School District, reported in 220 Iowa 812, at page 816, 263 N. W. 522, 524, the late Justice Parsons, speaking for this court, said:

''In the construction of contracts, the primary rule is 'that the court must, if possible, ascertain and give effect to the mutual intention of the parties, and that it must be construed in the light of the circumstances surrounding them at the time it is made, and that where parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great, if not controlling weight in determining its proper interpretation', citing 13 C. J., Contracts, par. 482, note 18, p. 521; par. 514, note 30, p. 542; par. 517, note 54, p. 546.''

So in the case at bar appellant placed a practical construction upon this contract; that it would be figured upon the basis of the number of machines operated where some had been stolen, as in this case.

In addition to this, the only provision in the contract upon which the appellant can base his contention is that "the Standard Mfg. Company guarantees a cash return of 120% on the investment in the above machines from the operation of same on a vending machine route for a period of twelve months."

Here is an effort on the part of appellant to strain the construction of the contract to meet his own views, and again we refer to the well-settled rule that in such a contract the provisions will be construed most strongly against the one who has prepared it, and, when the seller has prepared it to limit his liability, it will be strictly construed against him. Certainly no one anticipated when this contract was drawn that if a vending machine was stolen it would still be kept in operation. That would be expecting the impossible. There is no provision in the contract requiring replacement. Appellant could easily have put this into the contract; he has included in it about everything else that one could conceive of. The reasonable construction of the contract is that in the absence of provision therefor it does not contemplate that the purchaser shall buy machines to replace any which were stolen. The only place he could buy these machines was from the appellant, and, if appellant had refused to sell him one, then of course he would not, under the theory of appellant, be able to recover in this case.

The court in this case figured that he was entitled to recover on the basis of thirty-seven machines operated. The contract provides for the sale in units, and, figuring on the basis of the number of machines operated, due to the fact that three had been stolen, appellant could not possibly have suffered any injury.

IV. Another one of the conditions precedent was that the purchaser would report "every six weeks, showing the name and address of the person with whom machines were placed, the dates serviced, the amount and kinds of products vended, the amount of money taken by each machine, so that the company would know."

It is the contention of the appellant that these reports were not properly made, that they did not always reach the office in

Cedar Rapids within the exact six weeks period. There is no claim that appellee did not make the reports. He did make them; he made them in detail. Now for the first time complaint is made in regard to the manner in which the reports were made. At no time prior to the commencement of this lawsuit was any objection made in regard to the manner in which reports were made.

There is a letter in the record, from appellee, written in September of 1932, at which time he sent in his second report. We quote:

"I would appreciate knowing if this report is according to agreement. If I do not hear from you on this all I can do is assume they are correct and acceptable."

Appellant did not answer that letter. He stood by and permitted appellee to make the reports every six weeks, with no objection of any kind, altho he had been asked if the reports were satisfactory, until the time this lawsuit was brought.

It is contended these reports did not always reach Cedar Rapids exactly within the six weeks period; that on one or two occasions they were a day or two, or perhaps three, late. No such objection was made until the time that this lawsuit was brought. We find in the record a letter from appellee, asking whether appellant considered the period from June 15th to July 31st six weeks. To this letter he received no reply. Thereafter the reports were made within the exact time. It is hard to see how anyone could have complied more faithfully in the making of the reports than did the appellee. While the writer of this opinion is not familiar with the vending machine business, it would seem that the reports are as full and complete as they could be made.

■ V. We come now to the more serious proposition involved in this case. The following is one of the conditions precedent set out in the contract:

"If all of the machines are delivered within thirty days after the expiration of said twelve months period to the Std. Mfg. Co. at Cedar Rapids, Iowa, transportation charges prepaid, securely packed and good condition, this company upon receipt of the machines will re-purchase the above machines * * *."

Appellee in his last report showed that the machines had not produced anywhere near the 120 per cent guaranteed. He

did not return the machines. He pleads a waiver. At the end of the twelve months period appellee wrote appellant a letter, in which he said:

"I have brought in all machines, which will be thoroughly cleaned and packed with all equipment in the same manner as received. These will be shipped to you, prepaid, this week.

"I would much appreciate prompt settlement of this matter, as I expect to leave town, in order to find employment, and wish to clean up my debts before leaving."

Appellant replied to this letter on June 26, 1933. We quote from same:

"If you have taken up your machines, and if you ship them to Cedar Rapids, the responsibility for any expense or loss which may come to you as a result will rest upon your shoulders, for we will not submit to a demand when we believe it to be unjustified by the facts.

"There is no doubt in our minds but that, if you desire to discontinue as a vending machine operator, you can sell your vending machines there to much better advantage and to much greater profit for yourself than if you were to attempt to ship them back, and if there should be resulting litigation, for such litigation, if started, would undoubtedly cost you fully as much as you could realize after deducting expense of return, and the amount of your sales.

"These are matters for you to take carefully into consideration, Mr. Henriott. We have not attempted to point out all of the delinquencies on your part, either as to failure to send in some reports, or in other respects. We are simply putting the situation before you in a friendly way so that you may not get into a situation from which there can be no withdrawal without great expense, and loss.

"Sincerely yours,
"STANDARD MANUFACTURING CO.,
"By J. M. Parker."

It is appellee's contention that by writing this letter, instructing him not to return the machines, the appellant waived a formal tender. The appellant does not seriously question the fact that the original tender was waived. However, it is his contention that appellee did not keep that tender good in this case;

that "the making of a tender is one proposition and the keeping of it is quite another," especially where a lawsuit is brought.

In the case of McCormick H. M. Co. v. Markert, 107 Iowa 340, at page 343, 78 N. W. 33, 34, this court said:

"Further, it is said that no particular machine was ever tendered to defendant. Inasmuch as he refused to recognize the contract or receive any machine under it, no specific tender was necessary. Williams v. Triplett, 3 Iowa 518."

In the case of Olson v. Brison, 129 Iowa 604, at page 605, 106 N. W. 14, 15, we read:

"Ordinarily, before commencing an action at law to recover the price paid the vendee must give notice to the vendor of his election to rescind and offer to return the thing purchased. This is for the reason that the suit is for the consequences of rescinding, and is based on the ground that it has been effected. Technically, plaintiff's right to recover must be perfect when the suit is begun. But for the necessity of a tender, the commencement of the action for the consideration paid would be a sufficiently definite disaffirmance of the contract and an election to rescind. Laboyteaux v. Swigart, 103 Ind. 596 (3 N. E. 373); Thompson v. Peck, 115 Ind. 512 (18 N. E. 16, 1 L. R. A. 201); Howard v. Hunt, 57 N. H. 467; Skillman Hardware Mfg. Co. v. Davis, 53 N. J. Law 144 (20 Atl. 1080); Huey v. Grinnell, 50 Ill. 179; Mobley v. Pickett, 9 Ala. 97 (24 Am. & Eng. Ency. of Law, 645). The object of the tender is to give the vendor the option of joining in the rescission and taking back the property at the earliest period. The vendee will not be permitted to play fast and loose down to the last moment. The petition contained no allegation of an offer to return the property; that is, to put the vendor in statu quo, as a condition precedent to demanding the repayment of the consideration paid. Nevertheless evidence that the furnace and other material had been safely stored and that defendant was at liberty to remove the same at any time was introduced, without objection, and defendant admitted while on the witness stand that when plaintiff asked him, shortly before the furnace was removed from the house, what he intended to do about it, he responded that he would have nothing more to do with the matter, and, farther, that he would not have taken the furnace had it been brought back then, and would not at the

time of the trial. He would not have joined, then, in rescinding by receiving the property back, and any offer to return it would have been an idle and useless ceremony. If this was so, only an election to rescind was essential, and, as said, this was evidenced by the commencement of the suit.''

In Reeves & Co. v. Younglove, 148 Iowa 699, at page 704, 127 N. W. 1017, 1019, this court said:

''The contract provides for notice after the expiration of the six-day trial provided for, and then the plaintiff was to have a reasonable time in which to make the machinery comply with the contract. It not only appeared and undertook this work, but, if the defendants are to be believed, such appearance was in response to the notices given. The plows were not returned to Drinkwater as required by the contract, but the appellants contend that there was a waiver of such return. Whether there was such a waiver was a question for the jury. After the last trial, in which Mr. Lowell and the three other agents participated, the defendants stated to Mr. Lowell that they were not satisfied with the work of the plows, and asked him what they should do with them, to which he replied that he did not care what they did with the plows, that they belonged to them, and that they would have to pay for them. Although the defendants did not in the exact language offer to return the plows to Drinkwater, such was the fair import of the question, and it was evidently so understood by Mr. Lowell, as indicated by his answer. The defendants were, therefore, justified in believing that the plaintiff would not accept the plows or do anything more towards meeting the requirements of the warranty, if they were returned, but would enforce payment of the notes then held by them for the purchase price. Kuhlman v. Wieben, 129 Iowa 188, 105 N. W. 445, 2 L. R. A. (N. S.) 666; McDermott v. Mahoney, 139 Iowa 292, 115 N. W. 32, 116 N. W. 788.''

This court in Bricker v. Accident Association, 161 Iowa 61, at pages 64, 65, 140 N. W. 851, 852, said:

''That a party may waive any provision of a contract made for his benefits is too long and well established to be now open to controversy. That an insurance association, such as this, can waive a provision of its contract of insurance, providing for a forfeiture or suspension of the policy for failure to make pay-

ments strictly at the time and on the terms provided in the policy, has also been held. See Mayer v. Mutual Life Ins. Co., 38 Iowa 304, 18 Am. Rep. 34; Loughridge v. L. & E. Assn., 84 Iowa 141, 50 N. W. 568; Bailey v. Mutual Benefit Assn., 71 Iowa 689, 27 N. W. 770; Moore v. Order Railway Conductors, 90 Iowa 721, 730, 57 N. W. 623; Davidson v. Tribe of Ben Hur, 135 Iowa 88, 111 N. W. 46; Trotter v. Grand Lodge, 132 Iowa 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533; Hartford Insurance Co. v. Unsell, 144 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496; Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728. That this waiver may be shown by the acts and conduct of the officers of the association is well settled by many adjudicated cases. See Richwine v. Aid Assn., 76 Minn. 417, 79 N. W. 504; M. W. A. v. Colman, 68 Neb. 660, 94 N. W. 814, 96 N. W. 154; Trotter v. Grand Lodge, 132 Iowa 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533; Sweetser v. Mutual Aid Assn., 117 Ind. 97, 19 N. E. 722; Wallace v. Fraternal Circle, 121 Mich. 263, 80 N. W. 6. Where the acts and conduct of the insurer have been such as to indicate a purpose and intent not to insist upon a strict performance of the terms of the certificate touching the times of payment of installments, and where it appears that, without objection and without complaint, the company has permitted its members to pay installments due upon the contract after the time fixed in the contract for payment, and has accepted the same without claiming forfeiture or right to forfeiture, and where one, in reliance upon this custom, fails to make his payments strictly and at the times provided in the contract, it has been held that after loss the association is estopped to claim that which by its conduct it had so manifestly denied. When by its conduct it says to its members, 'We do not and will not insist on forfeiture or suspension for failure to pay as required by the strict terms of the certificate,' it cannot, after loss, so change its attitude to the prejudice of the members.''

We find the following in the case of Lake v. Silo Company, reported in 177 Iowa 735, at page 740, 158 N. W. 673, 674:

''In various forms, it is contended that the court erred in permitting a recovery by plaintiff, for the reason that it was not alleged in the petition, or proved upon the trial, that he had returned, or offered to return, the silo, to the place where he received it. He received it at the depot in the town of Gaza,

and hauled it to his farm, at least a quarter of a mile away, and he did not return it to the depot. Plaintiff does not expressly allege a return, or an offer to return the silo. The statement made by him was that defendant was duly notified that said materials were held by plaintiff at its (defendant's) risk. He proved that he told defendant's agent that he would not accept the silo; that they could take it; and that it was there (at the farm), subject to their order. The telegram which plaintiff sent the defendant has already been referred to, and this constituted no more than a refusal to accept the property. Defendant admitted, however, that it received a letter from plaintiff's counsel, before suit was brought, that the machine was there at its (defendant's) risk. Was this a sufficient tender, or offer to return the silo? The general rule is, that, if a buyer rescinds a contract of sale, he must return, or offer to return, all that he has received under the contract; and the tender, or offer, should be to return the property to the place where the property was received by the buyer; and, to make out a case for rescission, such tender must be pleaded, or an offer to return must be made in the pleadings. National Imp. & Const. Co. v. Maiken, 103 Iowa 118, 72 N. W. 431; Eadie v. Ashbaugh, 44 Iowa 519; Lunn v. Guthrie, 115 Iowa 501, 88 N. W. 1060; McCorkell v. Karhoff, 90 Iowa 545, 58 N. W. 913.

"As the law does not require the doing of vain things, if the seller refuses to accept the goods when offered, or indicates a purpose not to rescind, if tendered, no formal tender is necessary. Olson v. Brison, 129 Iowa 604, 106 N. W. 14."

In Hughes v. National Equipment Corporation, reported in 216 Iowa 1000, at page 1011, 250 N. W. 154, 159, this court, speaking thru Justice Donegan, said:

"We think the evidence further sufficiently shows that the appellee repeatedly told the appellant or its representatives that the dumptors would not be retained by him, and that, after many attempts to repair them and place them in working condition, the appellee finally notified the appellant that he would have nothing further to do with the dumptors and that they were at appellant's disposal. There is nothing in the evidence to indicate that either the appellant or any of its representatives ever suggested to the appellee that he should return the dumptors to the depot at Jamesport or to any other place. On the con-

trary, the evidence indicates that the appellant by its conduct refused to accept a return of the dumptors and continually insisted upon the appellee retaining the same.'' The opinion then cites the case of Lake v. Silo Company, 177 Iowa 735, 158 N. W. 673.

Having in mind the rules of law established in the cited cases, the uncontradicted record in this case shows the appellee wrote appellant that the machines were packed and would be shipped back, in compliance with the terms of the contract. Immediately appellant replied by letter, informing appellee not to ship back the machines, stating that he did not want them shipped back; that appellee could sell the machines in Kentucky; that litigation was expensive. In view of such a letter it would have been a useless thing for appellee to have shipped back the machines. Appellant had a right to have them shipped back but when he wrote that letter he waived that right. It is the fault of the appellant, and not of appellee, that the machines are not now in Cedar Rapids. In addition to this, at the time of the trial appellee testified that the machines were boxed and he could produce them in Cedar Rapids within a short time, by express, if appellant desired. By his conduct, appellant waived the right to have the machines tendered; it was thru his fault that they were not shipped from Kentucky to Cedar Rapids, and he cannot now complain.

The appellant says that Mr. Parker, the man who signed the letter, did not have authority to waive the provision in the contract. With this we cannot agree. This record shows that Mr. Parker worked in the office of the appellant; that he was in charge of correspondence with those who had purchased merchandise. His job was to answer letters. Unfortunately, since the writing of the letter Mr. Parker has died. The only testimony in this record in regard to Mr. Parker's authority is that of a lady who worked in the office, who is designated in the record as appellant's secretary. Appellant himself did not see fit to testify. To say that Parker, who was placed in charge of the correspondence with those having purchased machines from appellant, was vested with the naked power of simply answering correspondence, without any authority to waive or modify any term of the printed contract, would be, as well stated in Pitsinowsky v. Beardsley, 37 Iowa 9, 14,

"* * * to establish a snare by which to entrap the unwary, and enable principals to reap the benefits flowing from the conduct of their agent in the transaction of business intrusted to his hands, without incurring any of the responsibilities connected therewith." See, also, Northwestern Mutual Life Ins. Co. v. Steckel, 216 Iowa 1189, 250 N. W. 476.

VI. The appellant next contends that the court erred in permitting appellee to amend his petition to conform to the proof.

With this we cannot agree. The amendment was permitted for the purpose of simply conforming to the proof. As this court said in Reynolds & Heitsman v. Henry, 193 Iowa 164, at page 171, 185 N. W. 67, 70:

"The matters contained in the amendment to the petition had been supported by proof upon the trial, and were largely formal matters. It was clearly within the province of the court to permit the filing of the amendment to the petition, formally alleging these matters. Gray v. Sanborn, 178 Iowa 456, 159 N. W. 1004; Boyd v. Buick Automobile Co., 182 Iowa 306, 165 N. W. 908; Cahill v. Illinois Cent. R. Co., 137 Iowa 577, 115 N. W. 216; Heald v. Western Union Tel. Co., 129 Iowa 326, 105 N. W. 588; Decatur v. Simpson, 115 Iowa 348, 88 N. W. 839."

VII. We come now to the objections raised by appellant to the instructions.

Every single, solitary instruction is objected to. It may be the misplacing of a word, or it may be the failure to insert a comma, but objection is made. To go into each and everyone of them would be an almost endless task and would take pages of the printed records of this court. Phraseology of instructions must receive a reasonable construction, in view of all of the circumstances, and not a strained or forced one. Instructions should not be interpreted thru the magnifying eye of a technical lawyer.

The late Justice Weaver in the case of Elliott v. State Bank, 149 Iowa 309, at page 319, 128 N. W. 369, 372, states this far better than the writer of this opinion could, when he said:

"We think it must be said that no set of instructions ever yet framed by a trial court could stand the test of an appeal if the severely critical and technical tests for which appellant contends were to be adopted and enforced by us. Instructions

are of necessity prepared under more or less pressure to avoid interference with the progress of the business of the term. They are addressed to jurors unskilled in law and unversed in legal phraseology. To serve their purpose they should be brief, pointed and clear. If the court indulges in excessive minuteness of statement with respect to the law or facts, it is quite sure to envelop the case in darkness rather than light, and mislead and confuse the minds of the jurors. The standards by which instructions are to be judged are not those which might properly be applied to a technical treatise prepared for the use of the profession."

In the case of Thompson v. City of Sigourney, 212 Iowa 1348, at page 1354, 237 N. W. 366, 369, we read:

"It will be seen that the court used the word 'may' without discriminating for or against either party in the definition of her or its duty, and with respect to the plaintiff particularly the court plainly told the jury that whether she acted as an ordinary, prudent person 'must' always be in proportion to the danger. The instructions must be taken as a whole and so read are not misleading nor discriminatory."

And so in the case at bar we have gone over all of the various objections raised by the appellant. Reading the instructions as a whole, we find no error.

There are also other errors alleged and argued by the appellant, twenty-six in all. His brief consists of 123 pages and the reply brief of 25. Needless to say, we cannot discuss all of the propositions set out therein. They have been considered. The case was well tried. It was properly submitted to the jury, which returned a verdict for the appellee. The evidence justifies that verdict.

It necessarily follows that the case must be, and it is hereby, affirmed.—Affirmed.

ANDERSON, KINTZINGER, DONEGAN, RICHARDS, HAMILTON, SAGER, and MILLER, JJ., concur.