IN RE WILL OF MARY BEHREND.

WILLIAM (or WILL) BEHREND, Appellee, v. CARL BEHREND, Appellant.

No. 46208.

Sweet & Sager, of Waverly, and R. J. Sullivan, of New Hampton, for appellant.

R. Eldon Laird, of Waverly, for appellee.

MANTZ, J.—Involved herein is the admission to probate of an instrument executed November 5, 1935, as the will of Mary Behrend who died February 17, 1937, aged seventy-six years. In 1910 Mary and her husband, Louis Behrend, moved from their farm to Tripoli, Iowa. They deeded to each of their sons, Will and Carl, a farm, under an arrangement by which each son agreed to pay to the parents, or the survivor, an annuity or rental of $250 a year. The sons have since occupied these farms. When Louis died in 1931, he left his home in Tripoli and $6,700 in certificates of deposit to Mary. She occupied the home until her death.

This is the second appeal to this court. In re Will of Behrend, 227 Iowa 1099, 290 N. W. 78. In that case the court directed a verdict against the contestant. This action on appeal was reversed.

The will in controversy was filed and offered for probate on March 1, 1937, and two days later the contestant, Carl Behrend, filed objections to its probate, and since that time there have been four trials in the lower court involving the validity of this will, one appeal to this court, and it is here again on appeal from the last trial.

Mary Behrend died February 17, 1937, and the litigation got under way in about two weeks following her death. It has a marked progressive movement, and is somewhat reminiscent of the old song "Ole Man River," in that it just keeps rolling along.

The record is long and voluminous. Appellant's abstract of record has 209 pages. Appellee has filed an amendment to this abstract of 320 pages. The files and various proceedings have been certified to this court. Also in the record are various proceedings having their inception at the death of Louis Behrend, husband of Mary Behrend, who died sometime in 1931. The record shows that the two sons, Carl and Will, are not friendly, their difficulty apparently starting at the death of the father. About the time the parents left the farm they deeded to Carl a 140-acre farm, and a 120-acre farm to Will. It was agreed that each son was to pay to the parents or the survivor an annuity of $250. Following the death of the father, Carl did not pay the annuity, and when Mary died he owed her on said unpaid annuities $1,250. Shortly following the death of Louis Behrend, Carl petitioned the court asking that his mother be placed under guardianship, alleging that she was incapable of managing her own affairs or acting as executrix of her husband's estate. After some delay Carl dismissed the petition and thereupon Mary was appointed executrix of the estate of her deceased husband, closing the same in 1932.

In December 1933, Carl filed a second petition for the appointment of a guardian for his mother, with averments similar to the former application. Later he dismissed this petition.

The will in issue herein was executed November 5, 1935. It provided for the payment of testatrix's debts, gave Carl the rent on the farm due since 1932, and $25 in money. The remainder of the property was given to Will. She provided that if Carl contested the will the bequest to him was null and void, and the executor was directed to collect the unpaid annuities. Will was appointed executor without bond.

On March 1, 1937, the purported will was filed with the clerk and offered for probate. On March 3, 1937, Carl Behrend, as contestant, filed objections to the purported will, alleging unsoundness of mind on the part of the maker; that the same was not her will and was forced upon her by Will Behrend; that prior to and at the time the will was made the maker was under the absolute control, influence, and domination of Will Behrend to such an extent that it was not her will; and that said instrument was procured through the fraud and undue

influence of Will Behrend. The contestant further charged that at the time of the execution of the purported will, by reason of her mental condition Mary Behrend could not and did not recognize the extent of her property or know and determine the objects of her bounty or those who had rendered her service or taken care of her for many years.

Ten days were spent in the trial. The jury rendered a verdict for the proponent, thereby establishing the validity of the will. Contestant filed a motion to set aside the verdict and for a new trial. This was overruled. Contestant appealed.

Most of the errors relied upon by appellant relate to instructions given, and to some requested which were in part refused. Other errors related to evidence admitted over objection, exhibits offered and excluded upon objection, and misconduct of the jury.

It is the claim of appellant that some of the instructions given contain incorrect statements of law and that others are incomplete, confusing, and misleading.

We have gone over the record with care and studied the instructions. In this case they were rather long. A careful reading of them impresses us that the trial court made a studied and earnest effort to fully and correctly set forth the law to be applied by the jury in their deliberations.

Following a statement of the issues the court gave Instruction No. 3 as follows:

"Every person of full age and sound mind has the right to make a disposition of her property by will in such a way as to her may seem best.

"It is admitted that the written instrument referred to in the first of these instructions, which has been identified as Exhibit No. 3, dated November 5th, 1935, was made, executed and published in accordance with the laws of this state, but it is claimed by contestant that said instrument is void because of the reasons stated and alleged in the second instruction hereof. This is a question of fact to be determined by you from the evidence which has been admitted on the trial and now before you for your consideration.

"Every person is presumed to be sane, and to be a free

agent in the making of her will, until the contrary is shown and established by a preponderance of the evidence introduced upon the trial and now before you for your consideration."

The court then gave Instruction No. 4 as follows:

"In order to warrant you in concluding and finding that the instrument in question, Exhibit No. 3, which is dated November 5th, 1935, is not in fact the valid last will and testament of the said Mary Behrend, deceased, you must find from the weight or preponderance of the evidence introduced upon the trial and now before you for consideration that, at the precise time said instrument was signed by the said Mary Behrend, she was not competent to make a will, or, that the same was procured by the undue influence over her by her son, Will Behrend, as hereinafter defined, or both."

Thus it will be seen that the court correctly placed upon contestant the burden of establishing his claim that at the time Mary Behrend made the will she was lacking in mental capacity to do so, or that at such time she was so dominated by Will Behrend, appellee, that the instrument executed was not her will.

In Instructions Nos. 6 and 7 the court very fully and elaborately deals with the issue of undue influence and deals with the nature thereof and the proofs necessary to show its existence. The court told the jury that upon this issue direct proof thereof was not necessary, and that it might be shown by proofs of facts and circumstances indicating and showing that the instrument was not the free will of Mary Behrend.

Instruction No. 8 sets forth the things which the contestant was required to show to establish undue influence. That instruction is as follows:

"In order that you may find that the will in question, Exhibit No. 3, is not the valid will of testatrix, Mary Behrend, because of alleged undue influence upon her by the proponent, you are instructed that the burden is upon the contestant to prove by a preponderance of the evidence.

"1—That undue influence, substantially as alleged in the objections set out in Instruction No. 2 hereof, was, in fact, exerted by said proponent upon the said Mary Behrend; and,

"2—That such undue influence on the part of said proponent was successful in subverting and controlling the will of said testatrix, Mary Behrend, at the time of the execution of said instrument in question, Exhibit No. 3."

The matter of the mental capacity of Mary Behrend at the time the will was made is dealt with in part in Instructions Nos. 10 and 11. These two instructions deal with that subject and the facts and circumstances either showing or negativing that condition.

It seems to us that in dealing with both of those subjects, to wit, mental capacity and undue influence, the trial court fully and fairly set forth the matters necessary for their consideration.

The jury by its verdict upheld the validity of the will, thereby rejecting both claims relied upon by the appellant. These two issues were fact questions and the verdict of the jury must stand unless prejudicial errors were committed during the trial. Errors are not presumed and the burden rests upon the appellant not only to establish error but to further show that prejudice resulted.

It is hardly necessary for us to state that instructions must be taken and considered as a whole, and if those given fully, fairly, and correctly present the issues and the law, they are sufficient. Mathis v. Des Moines City Ry. Co., 196 Iowa 1028, 195 N. W. 620; Sandvig v. Nichtern, 196 Iowa 1124, 196 N. W. 39.

Each instruction must be considered as a whole and in the light of the rest of the charge, and if, when so considered, the jury has not been misled, no reversal will be granted on account of the instructions. Sunberg v. Babcock, 66 Iowa 515, 24 N. W. 19. The phraseology of instructions must receive a reasonable construction, in view of all the circumstances, and not a strained or forced one. Henriott v. Main, 225 Iowa 20, 279 N. W. 110; Smothers v. Hanks, 34 Iowa 286, 11 Am. Rep. 141. In considering instructions, we desire to call attention to the language used in the case of Elliott v. Capital City State Bank, 149 Iowa 309, 319, 128 N. W. 369, 372, wherein Justice Weaver, speaking for the court, said:

"We think it must be said that no set of instructions ever yet framed by a trial court could stand the test of an appeal if

the severely critical and technical tests for which appellant contends were to be adopted and enforced by us. Instructions are of necessity prepared under more or less pressure to avoid interference with the progress of the business of the term. They are addressed to jurors unskilled in law and unversed in legal phraseology. To serve their purpose they should be brief, pointed and clear. If the court indulges in excessive minuteness of statement with respect to the law or facts, it is quite sure to envelope the case in darkness rather than light, and mislead and confuse the minds of the jurors. The standards by which instructions are to be judged are not those which might properly be applied to a technical treatise prepared for the use of the profession.''

In considering the instructions given in the present case it is well to keep in mind the circumstances and conditions under which they were prepared and given. They were, no doubt, prepared at a time when the ''heat of battle'' was still present. About two weeks had been consumed in the trial. The court necessarily had to keep in mind the issues pleaded, those to be submitted, the evidence received and that excluded, the requests for instructions, and many other matters connected with the trial of the cause. Doubtless the fact that there had been three prior trials involving the validity of the will, and an opinion of this court rendered on an appeal from one of said trials, gave the trial court some concern. The purpose of instructions is to fairly set forth the issues and the law to be applied by the jury in arriving at a verdict. First National Bank v. Wise, 172 Iowa 24, 151 N. W. 495; Reed v. Chicago, R. I. & P. Ry. Co., 57 Iowa 23, 10 N. W. 285; McCausland v. Cresap, 3 (G. Greene) Iowa 161.

We will consider that part of the criticised instructions which seems to us to merit discussion. However, all will be considered. The instructions are rather long and elaborate. In most instances the criticism seems to follow a general pattern: parts of instructions, paragraphs and parts of paragraphs are set out and discussed by appellant, and, in some instances, without much regard to the rest of the instructions or the relationship to the whole or other parts thereof.

■ The first error claimed by appellant relates to Instruction No. 6. But a part of the instruction is set forth. The part criticised told the jury, in effect, that if, on November 5, 1935, Mary Behrend had the legal capacity to make a will and was free from undue influence, she had a right to dispose of her property by will in any way she desired, and in such event they (the jury) "would have nothing to do with the matter of whether said will was natural or unnatural, reasonable or unreasonable, fair or unfair, equitable or inequitable." This was simply telling the jury, if she was competent to make a will, and did so of her own free will, the jury had no right to question the disposition which she made of her property—in other words, they had no right to substitute their judgment for hers. Appellant stresses that part of the last sentence in such instruction following the words "in such event" and quoted above. In the same instruction the jury was told on the issue of undue influence they might consider the quoted part. This appeared in a paragraph in said instruction separate and apart from the one wherein there appeared the expression "in such event." The setting and placing of the language criticised must be viewed in the light of the whole instruction and all other instructions bearing thereon. Nothing could be clearer than that the quoted words had reference to the fact that, mental capacity and freedom from undue influence appearing, the jurors would have no concern with the disposal of the property by its owner. We think the instruction as a whole clearly and correctly announces the rule of law to be applied. McQuillen v. Meyers, 213 Iowa 1366, 241 N. W. 442; In re Will of Martin, 166 Iowa 233, 142 N. W. 74.

■ Appellant urges as error the giving of a part of Instruction No. 7, which in effect told the jury that influence acquired by kindness and attention does not constitute undue influence within the meaning of the law. We believe this to be a correct statement of the law. Again we repeat that the part complained of is but a part of the instruction, and it must be construed as a whole and applied to the evidence. Here existed the relationship of mother and son, the closest existing. The mother was not a member of the family of Will Behrend but

lived in her own home. The evidence shows that he was kind and considerate to her and did what he could to lighten the burden of her declining years. It would be but natural for her to appreciate his acts. In being kind, considerate, helpful, and loving he was simply paying Nature's just debt. Contrast this with the treatment afforded her by her son Carl. There is evidence that he referred to her as "the old thief"; that following the death of her husband, he and his wife, Amanda, went to her home in Tripoli, and while there raised such a disturbance that the closest neighbor warned them that if this happened again he would call the police. Following the death of Louis, Carl ceased to pay the $250 annuity, giving as his reason for so doing that she did not need it. The evidence shows that Carl was deeded a 140-acre farm; that it was more valuable than the 120 acres which were deeded to Will. There was no error in giving Instruction No. 7.

Instruction No. 7 could very properly be classed as a precautionary instruction. It is a well-recognized fact that at times jurors look with disfavor on wills wherein children of a testator are devised unequal portions. They frequently lose sight of the fact that the one who owns property has the absolute and unquestioned right to dispose of it in any manner he chooses, even if one is favored and another disinherited.

The appellant urges as error on the part of the court that in Instruction No. 9 the court, in speaking of Mary Behrend, told the jury that Carl had claimed that for several years prior to the time the will was executed the maker was afflicted with certain "constitutional diseases" that had produced in her a chronic, permanent state of mental derangement or impairment of mental faculties to the extent that she was not competent to make a will. Appellant's specific objection is the court erred in using the term "constitutional diseases," and he states that in place of that expression the court should have used the expression "physical and mental diseases." It is difficult to understand how the use of the criticised expression could have misled the jury, especially when that part is read in connection with the two paragraphs which follow the one in which it was used. A study of the evidence, and especially that of the doctors, creates

a rather strong inference that the term as used by the court and objected to by appellant was quite in accord with the facts.

█ Appellant makes complaint as to Instruction No. 10 in that in such instruction there is left out of consideration the other issue of undue influence. This court has held on numerous occasions that all instructions must be construed together and that the court cannot in any one instruction set forth all the matters to be passed upon. Instruction No. 10 dealt with the mental condition of Mary Behrend. This instruction must be read and considered in connection with Instructions Nos. 6 and 7, which two instructions deal fully and clearly with the claim of appellant of undue influence. We can see no merit in appellant's claim in regard to Instruction No. 10.

█ Appellant has urged that in several other instructions the court erred, having special reference to Instructions Nos. 11 and 13.

Instruction No. 13 has to do with weight and credibility to be allowed by the jury to the testimony of medical men, based upon hypothetical questions. Included as a sentence in said Instruction No. 13 is the following: "If the facts assumed as the basis for the opinion are not correct, then the opinion based thereon is worthless." Appellant contends that the court erred in using the word "worthless" and argues that the court should have told the jury that if the assumed facts of a hypothetical question were incorrect, then the opinion had no value. "Worthless" has been defined by lexicographers as meaning, "no value; no merit; useless." As we view it, there is no difference in the meaning of the two terms in a legal sense. Anspach v. Littler, 215 Iowa 873, 875, 245 N. W. 304, 305. In that case the court quoted from Hall v. Rankin, 87 Iowa 261, 264, 54 N. W. 217, 218, the following:

" 'The sole value of the opinion must, of necessity, depend upon the correctness of the statement of facts upon which it is based. If that is incorrect, then the opinion can have no weight or value whatever. It was held in Re Will of Norman, 72 Iowa, 89, that, if some of the facts on which the opinion was based were not established by the evidence, the opinions of witnesses which were founded on the assumption of the existence of such facts would be of no value whatever.' "

The court very properly instructed the jury that it was for them to determine what weight, if any, was to be given to the testimony of the medical witnesses who testified in the case concerning the mental or physical condition of Mary Behrend.

In connection with the claim of appellant that Instruction No. 7 was erroneous, he argues in his brief in support of such point that there existed between Mary Behrend and her son Will a confidential or fiduciary relationship, and that such was a factor for the jury to consider. We do not find that appellant made any such plea or claim until the motion for a new trial was filed. Such being the record, we cannot consider such claim on this appeal. However, aside from the lack of such issue, we think there is little in the evidence to sustain such a claim.

Exhibits 1, 2, and 24 were offered by appellant and upon objection of appellee were excluded. Appellant urges error in such exclusion. All these exhibits were court files in the estate and were made following the death of Mary Behrend. Exhibit 1 was an application for an order to prescribe notice for the probate of the will signed by William Behrend. It was made and filed with the clerk of the district court on March 1, 1937. Attached thereto was an order of court setting the same down for hearing on March 5, 1937.

Exhibit 2 is the notice of the time fixed for probating such will, given pursuant to the order of court attached to Exhibit 1. This notice was signed by H. C. Richmann, clerk of the district court, and was filed on March 1, 1937.

Exhibit 24 is the petition of William Behrend, by his attorney, Harry H. Hagemann, asking for the appointment of a special administrator. This was filed March 3, 1937.

All of these exhibits were offered on the issue of undue influence and they were objected to as being immaterial, incompetent, and irrelevant, and too remote in point of time to have any probative force. Mary Behrend died on February 17, 1937. Exhibit 1 was not filed until two weeks later and Exhibit 24 was filed five days following Exhibit 1. The fact that Will Behrend was named executor in his mother's will made him a proper person to file the petition for its probate. In so doing he was

exercising a legal right. No undue or unseemly haste is shown in his seeking to have the will probated. We are unable to see wherein the exclusion of the three exhibits worked any prejudice to contestant. Our opinion is that the court was right in excluding them.

 Harry H. Hagemann, the attorney who drew the will in controversy, was a witness for appellee. His firm had represented Mary Behrend at the time Carl Behrend sought to have her placed under guardianship. He testified to several visits of Mary Behrend to his office when her son Will was with her. There was inquiry, both on direct and cross-examination of the witness, as to what Will said on these occasions as to the property of Mary Behrend. The testimony given by the witness was quite long and dealt with various matters in which Mary Behrend was interested. Manifestly, the trial court is clothed with considerable discretion in admitting or rejecting offered testimony. We are of the opinion that the trial court did not err in admitting the testimony of this witness over the objection of appellant. As a matter of fact, some of the testimony of the witness objected to by appellant had been given previously without objection.

 Finally, appellant claims that he should be granted a new trial on account of misconduct of the jury. The alleged misconduct consists of conduct of some of the jurors, both in and out of court; of statements made in the jury room to the effect that trials of jury matters cost the county a lot of money; also a statement made by a certain juror, during the time the jury was deliberating, concerning Dr. Borchert, a witness for appellant, such statement being to the effect that said Dr. Borchert had doctored the grandfather of the juror for tumor of the brain and that later his grandfather had died from heart trouble, and that Dr. Borchert did not know anything. A further claim was made by appellant that friends and relatives of the wife of appellee talked and associated with certain members of the jury and discussed the evidence and case in the hearing of certain jurors. As frequently happens in such cases, affidavits of certain of the jurors were attached to the motion for a new trial; to the resistance were attached counteraffidavits, the former affirming the claim of misconduct charged by appellant, the latter negativing such claims. Appellant has attached to his

motion the affidavits of two jurors; the appellee has attached to his resistance the affidavits of ten of the jury. No attempt was made, so far as the record shows, to orally examine the affiants.

In overruling the motion wherein there was set out misconduct of the jury, the trial court did not abuse its discretion. Aken v. Clark, 146 Iowa 436, 442, 123 N. W. 379, 381; Hoyt v. Hoyt, 137 Iowa 563, 567, 115 N. W. 222, 224; State v. Billberg, 229 Iowa 1208, 1222, 296 N. W. 396, 404. In so ruling, the court used the following language:

"The court feels that the jury was composed of honest and intelligent men and women who understood their oath, and who also understood that their verdict should be based alone upon the evidence submitted to them. Prejudice must be shown or sufficient ground appear for presuming prejudice, to set aside the verdict. That the court does not have the right, on the record in this case, to presume that the statements were prejudicial."

There were also other errors alleged and argued by appellant. Appellant's brief consists of 106 pages and he devotes 69 pages to his reply brief. We have not discussed all of the propositions set forth therein. However, all have been considered and the ones deemed controlling have been discussed herein. We have not felt it necessary to set forth and discuss the numerous authorities cited in the briefs. The rules and principles controlling in cases of this kind are well settled.

This is a small estate, the inventory showing the value of the personal property as being $2,218.40. In addition there was the homestead, but we do not find in the record any value placed thereon. We think the value of the entire estate, both real and personal, is less than $5,000.

According to the undisputed record, this is the fourth trial in the district court involving the validity of the will. This is the second appeal to this court. In the amended abstract appellee makes the statement that the costs taxed in the lower court are $1,228.44. We do not find this statement denied by the appellant. The cost of the printing of the abstracts, briefs, and arguments in this case is $777. Thus we find that costs to

date are in excess of forty per cent of the estate. More than six years have elapsed since the will of Mary Behrend was filed for probate. There is ample evidence in the record to justify the inference that the matter of personalities existing between the appellant and appellee have figured to a large extent in the long-drawn controversy.

The case was well tried by capable counsel. We think it was properly submitted to the jury under the instructions, which we think fairly, fully, and correctly directed their attention to the rules of law to be applied by them in reaching a verdict. By their verdict they upheld the validity of the will. We think the evidence fully justifies their verdict.

Appellant's motion to strike the amended abstract was submitted with the case. It comprises about 320 pages. While it duplicates in some particulars the abstract of appellant, still it sets out parts of the record not set out by appellant, parts which we think necessary for a full consideration of the appeal. We do not feel that the motion should be sustained but think that the costs of the additional abstract should be divided equally between appellant and appellee.

The decree of the lower court is affirmed.—Affirmed.

All JUSTICES concur.